[L.A. No. 30967. Dec. 31, 1979.]

EVELYN JESS, Plaintiff, Cross-defendant and Appellant, v.
FAITH MARIE HERRMANN et al., Defendants, Cross-complainants
and Appellants.

132

COUNSEL

Patterson, Ritner & Lockwood and John A. Patterson for Plaintiff, Cross-defendant and Appellant.

Reilly, Holzhauer, Denver & McLain and Leon Small for Defendants, Cross-complainants and Appellants.

Robert E. Cartwright, Robert G. Beloud, Edward I. Pollock, Arne Werchick, Leroy Hersh, William P. Camusi, David B. Baum, Ralph Drayton, Stephen I. Zetterberg, Leonard Sacks, Horvitz, Greines & Poster, Ellis J. Horvitz, Irving H. Greines, Alan G. Martin, Spray, Gould & Bowers, Daniel O. Howard, Barbara A. Lane, Kevin J. Stack, Wylie Aitken, Wesley J. Kinder, Angele Khachadour and Paul Geary as Amici Curiae.

OPINION

**TOBRINER, J.**—Since the adoption of comparative negligence in *Li* v. *Yellow Cab Co.* (1975) 13 Cal.3d 804 [119 Cal.Rptr. 858, 532 P.2d 1226, 78 A.L.R.3d 393], our court has been called upon, in a succession

of cases, to determine the effect of the *Li* decision upon a number of distinct legal doctrines.[1] In the instant case, we address another important issue arising in the wake of *Li*, namely, the proper application of "setoff" principles in comparative negligence or comparative fault cases.

In this case, plaintiff and defendant were both injured when their cars were involved in an automobile accident. Each party sought damages from the other, claiming that the accident had been caused by the other's negligence. The jury found both parties partially at fault for the accident and returned verdicts awarding each of the parties damages diminished in accordance with the principles established in *Li*. Neither party obtained a judgment reflecting the compensable damages which the jury had awarded, however, because the trial court—over the objection of both parties—set off the parties' respective damages and entered a single net judgment in favor of the plaintiff, denying the defendant any recovery whatsoever. Both plaintiff and defendant have appealed, asserting that in comparative fault cases the impact of the *Li* decision compels a fundamental alteration of traditional setoff principles.

For the reasons discussed below, we have concluded that the judgment should be vacated and the case remanded to the trial court for further proceedings. As we shall explain, in a comparative fault setting the practical effect that a setoff rule has on opposing parties differs dramatically by reason of whether or not the affected parties are insured.

If neither party is insured, a mandatory setoff rule operates in the reasonable fashion contemplated by traditional setoff principles, eliminating an unproductive exchange of money between the adversary parties and protecting each party from the potential insolvency of the other. If, however, each of the parties—like most California drivers —carries adequate automobile insurance to cover the damages, then a mandatory setoff rule clearly operates inequitably. The setoff produces results detrimental to the interests *of both parties* and accords the insurance companies of the parties a fortuitous windfall simply because

---

[1]See *American Motorcycle Assn. v. Superior Court* (1978) 20 Cal.3d 578 [146 Cal.Rptr. 182, 578 P.2d 899] (joint and several liability, contribution and indemnity between negligent tortfeasors); *Daly v. General Motors Corp.* (1978) 20 Cal.3d 725 [144 Cal.Rptr. 380, 575 P.2d 1162] (products liability); *Safeway Stores, Inc. v. Nest-Kart* (1978) 21 Cal.3d 322 [146 Cal.Rptr. 550, 579 P.2d 441] (contribution and indemnity between negligent and strictly liable tortfeasors); *Associated Construction & Engineering Co. v. Workers' Comp. Appeals Bd.* (1978) 22 Cal.3d 829 [150 Cal.Rptr. 888, 587 P.2d 684] (employer subrogation rights under workers' compensation law).

each insured happens to have an independent claim against the person he has injured. Under these circumstances, we conclude that general principles of equity and common sense dictate that California courts not blind themselves to the realistic status of the parties vis-à-vis insurance.

In the present case the trial court invoked a mandatory setoff rule without considering the potentially inequitable effect of such setoff in light of the parties' insurance coverage, apparently concluding that the existing statutory provisions dictated an automatic setoff without regard to the interests of the parties or to the equities of the situation. As we shall point out, past California cases demonstrate that the trial court erred in interpreting the existing statutes as establishing an ironclad setoff rule that must invariably be applied notwithstanding the equities of the case or potential conflict with other state policies. Accordingly, we vacate the judgment and remand the matter to the trial court to permit the court to ascertain the parties' actual insurance coverage and to render an appropriate judgment in light of such coverage.

### 1. *The facts and proceedings below.*

On May 3, 1973, plaintiff Evelyn Jess and defendant Faith Marie Herrmann were both injured in an automobile accident when their cars collided near the intersection of Victoria and Main Streets in Los Angeles County. Jess thereafter filed the instant action against Herrmann for damages sustained as a result of the accident, and Herrmann in turn filed a cross-complaint against Jess, seeking recovery for the damages which she had suffered.

At the conclusion of the trial, the jury, in its special findings on comparative negligence (BAJI No. 14.94), determined that both parties were partially responsible for the accident, allocating 40 percent of the fault to plaintiff Jess and 60 percent to defendant Herrmann. The jury additionally found that Jess had suffered $100,000 in overall damages and that Herrmann had sustained $14,000 in damages. Reducing each of the parties' total damages by the amount of the party's respective fault, the jury determined that Jess was entitled to recover $60,000 ($100,000 less (40 percent of $100,000)) and that Herrmann was entitled to recover $5,600 ($14,000 less (60 percent of $14,000)).

The trial court, however, did not enter separate judgments in favor of each party in the amount of the recoverable damages ascertained by the

jury. Instead, over the objection of both parties, the court offset the two awards and entered a single judgment in favor of Jess for $54,400, the difference between the awards. Under the trial court judgment, Herrmann obtained no recovery whatsoever.

Both Jess and Herrmann[2] have appealed from the trial court judgment, each arguing that the trial court should not have set off the respective awards but instead should have entered separate judgments corresponding to the jury verdicts, i.e., a judgment in favor of Jess for $60,000 and a judgment in favor of Herrmann for $5,600. A number of amici curiae, some appearing at the court's request in order to assure adequate representation of all interests, take issue with the parties' contention and urge that the trial court's judgment be affirmed. As noted above, we have concluded that the judgment should be vacated and the case remanded to the trial court for further proceedings.

2.  ██  *In a comparative fault setting, the appropriate application of setoff principles cannot be determined in the absence of a consideration of the parties' insurance status. Since the trial court applied a mandatory setoff rule without considering the parties' actual insurance coverage, the judgment must be vacated and the case remanded to the trial court to permit such consideration.*

In setting off the respective jury verdicts and entering a single net judgment in favor of plaintiff, the trial court in this case ostensibly applied the setoff principles reflected in sections 431.70 and 666 of the Code of Civil Procedure.[3] Although both plaintiff and defendant sug-

---

[2] Although the Herrmann notice of appeal names Richard Herrmann as well as Faith Marie Herrmann as an appealing defendant and cross-complainant, no claim of error is urged in his behalf. Accordingly, we must dismiss the appeal as it relates to him. Other than to do so in our dispositive order, we make no further mention of him in this opinion.

[3] Section 431.70 provides: "Where cross-demands for money have existed between persons at any point in time when neither demand was barred by the statute of limitations, and an action is thereafter commenced by one such person, the other person may assert in his answer the defense of payment in that the two demands are compensated so far as they equal each other, notwithstanding that an independent action asserting his claim would at the time of filing his answer be barred by the statute of limitations. If the cross-demand would otherwise be barred by the statute of limitations, the relief accorded under this section shall not exceed the value of the relief granted to the other party. The defense provided by this section is not available if the cross-demand is barred for failure to assert it in a prior action under Section 426.30. Neither person can be deprived of the benefits of this section by the assignment or death of the other."

Section 666 provides: "If a claim asserted in a cross-complaint is established at the

gest that these statutes—which were enacted well before this court's adoption of comparative negligence in *Li*—are fundamentally in conflict with *Li*'s principles and should have no application in comparative fault cases whatsoever, we think that position overstates the potential difficulties presented by the application of traditional setoff rules in a post-*Li* setting. As we shall explain, the propriety of the application of traditional setoff principles in such cases depends upon the availability of insurance coverage.

In cases in which neither party in a comparative fault action is covered by liability insurance, no conflict arises between ordinary setoff rules and the maintenance of a fair comparative fault system, since in such circumstances a setoff procedure simply eliminates a superfluous exchange of money between the parties. Thus, for example, if neither Jess nor Herrmann carried any automobile liability insurance and both were financially able to pay the judgment against them, the setoff procedure applied by the trial court in the present case would not affect either party's net recovery, but would simply operate as an accounting mechanism to avoid a payment and repayment of the same funds from one party to another. Without setoff, Jess would pay Herrmann $5,600 and Herrmann would return the $5,600 she had just received from Jess along with $54,400 of her own funds for a total of $60,000; a set-off procedure merely reduces the exchange to a single transaction in which Herrmann pays $54,400 to Jess.

Moreover, in an uninsured setting a setoff rule may operate to preclude an unfair distribution of loss if one of the parties is totally insolvent or is unable to pay a portion of the judgment against him. For example, if in the instant case, Herrmann is uninsured and insolvent, the traditional setoff rule would prevent Herrmann from first recovering $5,600 against Jess and thereafter defaulting on her larger $60,000 debt to Jess. (See Fleming, *Report to the Joint Committee of the California Legislature on Tort Liability on the Problems Associated with American Motorcycle v. Superior Court* (1979) 30 Hastings L.J. 1464, 1470.) Nothing in *Li* or its progeny suggests that an injured party

---

trial and the amount so established exceeds the demand established by the party against whom the cross-complaint is asserted, judgment for the party asserting the cross-complaint must be given for the excess; or if it appears that the party asserting the cross-complaint is entitled to any other affirmative relief, judgment must be given accordingly.

"When the amount found due to either party exceeds the sum for which the court is authorized to enter judgment, such party may remit the excess, and judgment may be rendered for the residue."

should be denied the limited protection from an insolvent debtor that the traditional setoff rule affords. Accordingly, we do not believe that *Li* dictates a total abandonment of traditional setoff rules in comparative fault cases in which neither party is insured.

In cases in which the opposing claimants in a comparative fault action carry adequate liability insurance, however, the effect of a mandatory setoff rule differs completely, and the inequities which give rise to the present plaintiff's and defendant's objection to the trial court's action become readily apparent.

The facts of the instant case illustrate the problem. If both Jess and Herrmann carry adequate automobile insurance, in the absence of a mandatory setoff rule Jess would receive $60,000 from defendant Herrmann's insurer to partially compensate her for the serious injuries caused by Herrmann's negligence, and Herrmann would receive $5,600 from Jess' insurer to partially compensate her for the injuries suffered as a result of Jess' negligence. Under the setoff rule applied by the trial court, however—despite the fact that both Jess' and Herrmann's injuries, financial losses and insurance coverage remain in fact unchanged—Jess' recovery from Herrmann's insurer is reduced to $54,400 and Herrmann is denied any recovery whatsoever from Jess' insurer.

As these facts demonstrate, a mandatory setoff rule in the typical setting of insured tortfeasors does not serve as an innocuous accounting mechanism or as a beneficial safeguard against an adversary's insolvency but rather operates radically to alter the parties' ultimate financial positions. Such a mandatory rule diminishes *both* injured parties' actual recovery and accords both insurance companies a corresponding fortuitous windfall at their insureds' expense. Indeed, in this context, application of a mandatory setoff rule produces the anomalous situation in which a liability insurer's responsibility under its policy depends as much on the extent of the injury suffered by its own insured as on the amount of damages sustained by the person its insured has negligently injured.

Such a result runs directly contrary to the main objective of this state's financial responsibility law (see Veh. Code, § 16000 et seq.), which is to assure "monetary protection to that ever changing and tragically large group of persons who...suffer grave injury through the

negligent use of [the] highways by others." (*Continental Cas. Co.* v. *Phoenix Constr. Co.* (1956) 46 Cal.2d 423, 434 [296 P.2d 801, 57 A.L.R.2d 914]; see, e.g., *Simmons* v. *Civil Service Empl. Ins. Co.* (1962) 57 Cal.2d 381, 385 [19 Cal.Rptr. 662, 369 P.2d 262]; *Interinsurance Exchange* v. *Ohio Cas. Ins. Co.* (1962) 58 Cal.2d 142, 153-154 [23 Cal.Rptr. 592, 373 P.2d 640]; *Barrera* v. *State Farm Mut. Automobile Ins. Co.* (1969) 71 Cal.2d 659, 670-673 [79 Cal.Rptr. 106, 456 P.2d 674].)[4] As Professor Fleming has recently explained, "The purpose of liability insurance is not only to protect the insured against the adverse impact of liability but to assure that the victim be actually compensated for his tort loss instead of having merely an empty claim against a judgment-proof defendant. . . . [T]o allow set-off between A's and B's liability insurers would thwart the latter function and confer an undeserved windfall on the insurers." (Fleming, *Report to the Joint Committee of the California Legislature on Tort Liability on the Problems Associated with American Motorcycle Association v. Superior Court, supra*, 30 Hastings L.J. 1464, 1470 (fn. omitted).)

For these reasons, virtually all of the commentators who have analyzed this issue concur in Professor Fleming's conclusion that "[t]he only sensible solution from the point of view of compensation and loss spreading is . . . to proscribe set-off under 'pure' comparative negligence law whenever the participants are insured." (Fleming, *Foreword: Comparative Negligence at Last—By Judicial Choice* (1976) 64 Cal.L.Rev. 239, 247; see, e.g., Levy, *Pure Comparative Negligence: Set-Offs, Multiple Defendants and Loss Distribution* (1977) 11 U.S.F.L.Rev. 405, 413; George & Walkowiak, *Blame and Reparation in Pure Comparative Negligence: The Multi-Party Action* (1976) 8 Sw.U.L.Rev. 1, 28-29; Posner et al., *Comparative Negligence in California: Some Legislative Solutions—Part III* L.A. Daily J. Rep. (Sept. 9, 1977) pp. 4, 6-9.)

Several decisions of the Florida Supreme Court confirm the importance of considering the matter of insurance coverage in applying traditional setoff rules in comparative fault cases. In *Hoffman* v. *Jones* (Fla. 1973) 280 So.2d 431, the seminal Florida comparative negligence

---

[4]Although pre-*Li* cases frequently spoke of the purpose of the financial responsibility law in terms of providing compensation "for those injured through no fault of their own" (e.g., *Interinsurance Exchange* v. *Ohio Cas. Ins. Co., supra*, 58 Cal.2d at p. 154), it is clear that in light of *Li* the purpose of the statutes must be more broadly defined as seeking to assure that monetary compensation is available for all injured parties who are entitled to recover damages as the result of another person's negligent use of the highways.

decision relied on by our own court in *Li* (see 13 Cal.3d at pp. 812, 826-827), the Florida Supreme Court initially indicated that general principles of setoff should be applied in a comparative negligence setting. (280 So.2d at p. 439.) The *Hoffman* case, however, did not involve the question of insurance coverage and the court consequently had no occasion to consider the effect that a general setoff rule would have with respect to insurance.

Several years later, the Florida court addressed the setoff issue again, this time in a case in which the potential effect of a setoff rule on insurance coverage was directly presented. In *Stuyvesant Ins. Co.* v. *Bournazian* (Fla. 1977) 342 So.2d 471, the court concluded that while a setoff rule could properly be applied "between injured parties liable to each other in order to avoid an unnecessary exchange of checks and the possibility of inequitable judgment executions," the setoff concept "should have no effect on the contractual obligation of liability insurance carriers to pay the amounts for which their insureds are legally responsible." (*Id.*, at p. 473.)

Although the insurer in *Stuyvesant*, like the numerous amici in the instant case, argued that its obligation under its insurance policy should be viewed only as an obligation to pay sums owed by its insured *after the setoff of any debts which the injured party owed its insured*, the Florida court emphatically rejected that suggestion. The court recognized that in securing insurance coverage an insured does not thereby authorize its insurance company to reduce its own liability by, in effect, appropriating to its own benefit a separate asset of the insured, i.e., the insured's right to recover for his own injuries. (*Id.*,, at pp. 473-474 & fn. 5.) The Florida court stated in this regard: "Nothing in *Hoffman*, the insurance laws, or the public policy of this state justifies our reading into a standard automobile liability insurance contract a requirement that a partially-negligent but fully-insured person should absorb a portion of the cost of his negligence. The purpose of the contract is precisely to the contrary, being designed and paid for to relieve the insured of all such obligations (within policy limits and over agreed deductibles, of course.)" (*Id.*, at p. 474.)

Accordingly, the *Stuyvesant* court concluded that "the concept of 'set off'. . . as announced in *Hoffman* applies only between uninsured parties to a negligence action, or to insured parties to the extent that insurance does not cover their mutual liabilities. The doctrine has no effect on the contractual obligation of liability insurance carriers." (*Id.*)

Various amici in the instant case proffer a number of criticisms of the general rule adopted in the *Stuyvesant* case, asserting that at least under some circumstances the rule may afford an unfair advantage to uninsured motorists over insured motorists.[5] We need not decide at this juncture, however, whether the "*Stuyvesant* rule" should necessarily be applied under all circumstances in California comparative fault cases. At least in cases in which both parties to a lawsuit carry adequate in-

[5]Amici contend that when one party is insured and the other party is uninsured, a no-setoff rule operates unfairly because it permits the uninsured party to recover from the insured party's insurer, while the insured party may be unable to collect if the uninsured party is insolvent. Under the mandatory setoff rule advocated by amici, however, an insured party certainly has no greater ability to recover for his injuries if his adversary is uninsured and insolvent. We have some question whether a no-setoff rule is necessarily "unfair" simply because it permits an uninsured and insolvent party, who has in fact suffered real injury as a result of another party's negligence, to recover from an insurance company which has in fact been paid premiums to provide insurance for *just such a situation.*

Moreover, in many cases an insured party will benefit from a no-setoff, as opposed to a setoff, rule even if the other negligent party is uninsured and insolvent. In that situation the insured will frequently be able to obtain at least some recovery by levy and execution on the sums which its insurer pays to the uninsured party. In addition, if, like most insured drivers in California, the insured party has not deleted uninsured motorist coverage from his automobile insurance policy (see Ins. Code, § 11580.2, subd. (a)), an insured driver may frequently benefit from a no-setoff rule because his recovery under the uninsured motorist provision will not be reduced by setoff principles.

The draftsmen of the Uniform Comparative Fault Act have fashioned a setoff provision which attempts to meet the problems ostensibly arising in the context of insured and uninsured drivers. Section 3 of the uniform act adopts a general setoff rule, but affords an insured a right to recover from his own insurance company the amount which the insurance company's liability has been reduced by reason of the setoff. (12 West's U. Laws Ann. (1979 Supp.) Civ. Proc. & Remedial L.U. Comparative Fault Act, § 3, p. 31.) Like a no-setoff rule, this procedure ensures that an insurance carrier will not reap a windfall benefit at the expense of its own insured's recovery. In addition, however, the provision operates to favor an insured tortfeasor (and to some extent his insurer) at the expense of an uninsured tortfeasor, transforming the insured's liability insurance into first-party "uninsured motorist" coverage, and precluding an injured party who happens to be uninsured from recovering any damages which are subject to setoff.

Such a provision does have the arguably beneficial effect of rewarding motorists who carry adequate liability insurance. To the extent that the insured's injuries would in any event be compensated by existing uninsured motorist coverage, however, the provision operates simply to reduce the insurance company's liability to the injured uninsured party without providing any additional benefits to the insured. This result presumably conflicts with the compensation objectives of California's financial responsibility law.

As we explain in text, we have no occasion at this stage of the proceeding to determine the appropriate equitable setoff rule that should control under differing hypothetical circumstances. Because the trial court in this case applied a mandatory setoff rule over the objection of both parties and without any consideration of the parties' actual insurance coverage, we conclude that the judgment should be vacated and remanded for further proceedings.

surance to cover the damages found to be payable to an injured party, both the public policy of California's financial responsibility law and considerations of fairness clearly support a rule barring a setoff of one party's recovery against the other. Because the trial court in the instant case set off the parties' respective judgments without considering the status of the parties' insurance coverage, we conclude that equitable considerations would best be served by remanding the matter to the trial court so that it may ascertain the parties' actual insurance coverage and thereafter resolve the setoff issue with full knowledge of such coverage.[6]

Of course, even if equitable considerations are furthered by a setoff rule which takes cognizance of the parties' actual insurance coverage, the question remains whether current California statutes preclude a trial court from taking into account such considerations in the setoff context. Amici argue that the governing statutes establish an inflexible and automatic setoff rule, which compels a trial court to set off "competing" judgments in all cases, even when both parties oppose such a setoff and when a setoff may conflict with the public policy reflected in the state's financial responsibility law.

We have found nothing in the numerous cases applying the relevant statutory provisions or their predecessors which warrants such a reading of the statutes. ■ As our court noted in *Kruger* v. *Wells Fargo Bank* (1974) 11 Cal.3d 352, 362 [113 Cal.Rptr. 449, 521 P.2d 441, 65 A.L.R.3d 1266], California's current statutory setoff provisions emanate from "the established principle *in equity* that either party to a transaction involving mutual debts and credits can strike a balance, holding himself owing or entitled only to the net difference...." (Italics added.) In light of this equitable origin, numerous California decisions have recognized that "the... right to setoff is not absolute, but

---

[6]The designated record on appeal does not indicate whether either or both parties were in fact insured at the time of the accident, or, if insured, what insurance coverage each party actually possessed. The absence of this information in the record is not surprising, however, since California does not presently afford an injured person a right directly to sue an insurance company which may be liable for the injury (cf. Ins. Code, § 11580, subd. (b)(2)) and since Evidence Code section 1155 specifically precludes the introduction of evidence of liability insurance "to prove negligence or other wrongdoing." Given this state of the law, we do not think it would be appropriate to rely on the absence of evidence of insurance in the present record as a basis for barring the parties from obtaining relief from a possibly inequitable setoff, particularly since one or both of the parties may well have been represented at trial by counsel provided by their insurers. We note that in briefs filed on appeal both plaintiff and defendant have stated that each of the parties did in fact possess liability insurance which covered the accident in question.

may be restricted by judicial limitations imposed to uphold [independent] state policy." (*Id.*, at pp. 367-368 & cases cited at fn. 24.)

Moreover, past California decisions have additionally made it clear that under appropriate circumstances a party may waive the statutory right of setoff. (See, e.g., *Franck* v. *J.J. Sugarman-Rudolph Co.* (1952) 40 Cal.2d 81, 90 [251 P.2d 949]; *Reveal* v. *Stell* (1922) 56 Cal.App. 463, 466 [205 P. 875].) Amici have cited no case in which the statutory provisions have been interpreted to compel a trial court to set off corresponding judgments over the express objections of both parties. (See generally Comment, *Automatic Extinction of Cross-Demands:* Compensatio *from Rome to California* (1965) 53 Cal.L.Rev. 224; 274-275 ("one who is entitled to *compensatio* may waive his right to it; under the analysis presented here, automatic extinction of cross-demands is not forced on a party against his will.") ▪ Under these circumstances, we conclude that the current setoff statutes cannot properly be interpreted to require setoff in cases in which such a setoff will defeat the principal purpose of California's financial responsibility law and will provide an inequitable windfall to an insurance carrier at the expense of the carrier's insured.

Accordingly, we conclude that the trial court in the present case erred in setting off the parties' respective judgments and entering a single net judgment without considering the parties' insurance status and the effect that such a setoff would have on the parties' ultimate financial recovery.

Insofar as it relates to defendant Richard Herrmann the appeal is dismissed. The judgment is vacated and the case is remanded to the trial court for further proceedings consistent with the views expressed in this opinion. The parties shall bear their own costs on appeal.

Bird, C. J., Mosk, J., and Newman, J., concurred.

MANUEL, J.—I dissent. In my view the majority, pursuing a course intended to assure the highest possible in-hand recovery to the negligent victims of automobile accidents, have intruded into the legislative domain in a manner which can only lead to confusion and perplexity. Proceeding under the twin banners of "equity" and "public policy," they have not only ignored the clear purport of existing statutory provisions but, in so doing, have placed upon our trial courts the task of carrying

forward the burden of their creation in the myriad of cases—possibly including this one—which will fail to fit the exemplar they delineate. Finally, their holding contemplates the fixing of obligations on nonparty insurers in excess of those provided for by contract—all apparently in the absence of appearance or argument by the very entities so affected. It is my view, in short, that if rules are to be announced which take explicit account of the presence and effect of liability insurance in the comparative negligence context—and which operate in that context to alter the ex contractu nature of the insurance relationship—it is the Legislature which should announce them. I would affirm the judgment.

## I

I am of the opinion that the provisions of Code of Civil Procedure[1] sections 431.70 and 666, reasonably construed, clearly *require* setoff and the entry of net judgment in the circumstances revealed by the instant record.

Section 431.70 was based upon former section 440, which provided: "When cross-demands have existed between persons under such circumstances that, if one had brought an action against the other, a counterclaim could have been set up, the two demands *shall be deemed compensated,* so far as they equal each other . . . ." (Italics added.) This language was held by us in *Jones* v. *Mortimer* (1946) 28 Cal.2d 627 [170 P.2d 893] to "mean nothing more or less than that each of the claimants is *paid* to the extent that their claims are equal." (*Id.,* at p. 633; original italics.) There was no necessity that the cross-demands be liquidated at the time of filing. (*Hauger* v. *Gates* (1954) 42 Cal.2d 752, 755 [269 P.2d 609].)

Section 431.70, enacted in 1971, "continues the substantive effect of" the former section. (Sen. Legis. Com. comment foll. § 431.70.) The new section provides: "Where cross-demands for money have existed between persons at any point in time when neither demand was barred by the statute of limitations, and an action is thereafter commenced by one such person, the other person may assert in his answer the defense of payment in that the two demands are compensated so far as they equal each other . . . ." Although the new section is limited in its application to cross-demands "for money," this limitation does not imply that such claims be liquidated. (See Sen. Legis. Com. comment, *supra.*) An unli-

[1] Hereafter all section references, unless otherwise indicated, shall be to the Code of Civil Procedure.

quidated demand for money damages for injury to person or property is in my view a demand "for money" within the meaning of the statute.

The parties urge, however, that section 431.70 cannot be held to require an offset in the instant circumstances because Herrmann in setting up her cross-demand did not do so by setting up "the defense of payment" *in her answer* as the section requires but rather did so by way of a cross-complaint seeking affirmative relief. I cannot agree. Not only would such a result exalt form over substance, it would clash with what I believe to be the correct interpretation of section 666 as it was amended in the same revision of the Code of Civil Procedure which produced section 431.70.

Section 666 now provides: "If the claim asserted in a cross-complaint is established at the trial and the amount so established exceeds the demand established by the party against whom the cross-complaint is asserted, judgment for the party asserting the cross-complaint *must* be given for the excess; or if it appears that the party asserting the cross-complaint is entitled to any other affirmative relief, judgment *must* be given accordingly. [¶] When the amount found due to either party exceeds the sum for which the court is authorized to enter judgment, such party may remit the excess, and judgment may be rendered for the residue." (Italics added.) Prior to the 1971 amendment to the code this section spoke in terms of counterclaim rather than cross-complaint. Its primary purpose was to insure that a defendant seeking relief by counterclaim who established liability against a plaintiff in an amount in excess of that established by the latter against such defendant could obtain judgment for the excess without the necessity of filing a separate action. (See 3 Witkin, Cal. Procedure (2d ed. 1971) p. 2592.) In 1971, with the abolition of the counterclaim and the institution of the requirement that all claims formerly asserted thereby be asserted by cross-complaint (§ 428.80)—which was to be a separate document rather than a part of the answer as the counterclaim had been (§§ 428.10, 428.40)—it became necessary to amend section 666. In so doing the Legislature simply substituted terms appropriate to cross-complaint for those which had concerned counterclaim. The result, the parties hereto seem to argue, was to render setoff mandatory in a situation of cross-demands by complaint and cross-complaint only when the amount established under the latter *exceeds* the amount established under the former, precluding such action in the opposite situation.

What this position fails to recognize, however, is that the statute as amended also now provides, as it provided formerly with respect to counterclaims, that "if it appears that the party asserting the cross-complaint is entitled to any other affirmative relief, judgment must be given accordingly." This language, when viewed in the light of the statutory history adverted to above, must in my view be interpreted to contemplate and require setoff and the entry of one net judgment in all cases in which reciprocal cross-demands for money are raised and established by complaint and cross-complaint.[2] This interpretation is wholly consistent with what has been the undoubted common law in this jurisdiction for at least three-quarters of a century. (*Langford* v. *Langford* (1902) 136 Cal. 507, 508-509 [69 P. 235]; see 40 Cal.Jur.3d, Judgments, § 66, p. 418; 28 Cal.Jur.2d, Judgments, § 68, p. 704; 14 Cal.Jur., Judgments, § 47, p. 944.)

There is no reason why this rule should not be applied when reciprocal cross-demands for money are made in the context of an action to be determined under the doctrine of comparative negligence. It is of course true that the indicated statutory provisions were all enacted prior to the institution of comparative negligence as the law of this jurisdiction in the 1975 *Li* case. At that time, therefore, contributory negligence was a complete defense, and the possibility of two negligent parties recovering against one another did not exist. It is manifest, however, that the application of setoff in the circumstances we here consider is wholly in accord with the general purpose and intent of setoff provisions, which is "to avoid multiplicity of suits and to have all conflicting claims between the parties settled in a single action...." (*Terry Trading Corp.* v. *Barsky* (1930) 210 Cal. 428, 435 [292 P. 474]; see also *Buckman* v. *Tucker* (1937) 9 Cal.2d 403, 408 [71 P.2d 69].) Accordingly, the fact that the Legislature may not have anticipated the advent of comparative negligence at the time of its 1971 revision of the Code of Civil Procedure cannot in my view operate to preclude application of the setoff provisions when adopted to the case before us.[3]

---

[2]It would appear that a cross-demand in an amount less than that claimed in the complaint can be made in the answer as well as by cross-complaint. (See § 431.70, discussed *ante*.)

[3]Although no inference can properly be drawn from legislative inaction in the circumstances here before us, I note in passing that on two occasions subsequent to our *Li* decision the Legislature has declined to amend section 666 to preclude its application in comparative negligence cases. (Assem. Bill No. 586 (1975-1976 Reg. Sess.) § 1; Sen. Bill No. 1269 (1977-1978 Reg. Sess.) § 1.) On the other hand, a bill which would have explicitly *provided* for setoff in such case has also failed to secure passage. (Sen. Bill No. 1959 (1977-1978 Reg. Sess.).)

Finally, I see nothing in the case of *Kruger* v. *Wells Fargo Bank* (1974) 11 Cal.3d 352 [113 Cal.Rptr. 449, 521 P.2d 441, 65 A.L.R.3d 1266] which would justify the reliance placed on it by the majority. We there held that a banker's setoff could not be applied against deposits derived from unemployment and disability benefits because "to permit [such setoffs would] frustrate the Legislature's objectives in providing such benefits and in protecting them from seizure by creditors [see § 690.175; Unemp. Ins. Code, § 1342]." (11 Cal.3d at p. 367.) In other words, there we simply harmonized the provisions of the mandatory setoff statutes with applicable exemption statutes, concluding that the legislative objectives of the latter should prevail in order to prevent their "practical repeal." (See 11 Cal.3d at p. 368.) Such considerations are simply not relevant to the instant case, for no clash of legislative objectives is here involved.

## II

The majority opinion, as I understand it, although it remains largely silent in the face of the above-discussed contentions of the parties, appears to reflect fundamental agreement with my analysis in all cases in which liability insurance is not a factor. Insofar as the record here indicates, this is just such a case. The majority, however, eschewing normal principles of appellate procedure, prefer to launch out upon an expedition of surmise and hypothesis. Positing a situation in which "each of the parties—like most California drivers—carries adequate automobile insurance to cover the damages" (majority opn., *ante*, p. 134),[4] they conclude that "at least" in such a case "both the public policy of California's financial responsibility law and considerations of fairness clearly support a rule barring a setoff of one party's recovery against the other" (*Id.*, p. 142). I am at a loss to understand, however, how such a rule may be announced in a case where the record does not even indicate *whether* the parties are insured, let alone the particulars of any policy which may be applicable. Clearly the principles stated by the majority will be of scant assistance to the trial court herein if upon remand it is found that even the *instant* case does not fit the majority's paradigm; this eventuality, it appears, is far from unlikely.[5]

---

[4]The majority does not indicate the source upon which it relies for the quoted dictum. (See and cf. *Brown* v. *Merlo* (1973) 8 Cal.3d 855, 868, fn. 10 [106 Cal.Rptr. 388, 506 P.2d 212, 66 A.L.R.3d 505].)

[5]Remarks made at oral argument by counsel for one of the amici curiae indicate that defendant Herrmann is "underinsured." I understand this to mean that the insurance carried by her is insufficient to cover the $60,000 damages awarded by the jury to Jess. In this circumstance Herrmann can likely expect no in-hand recovery *whether or not* setoff is ordered, for in the absence of setoff the amount recovered by her from Jess's insurer will be subject to levy and execution by Jess.

It is suggested by the majority, however, that the awesome silence of the record on the question of insurance is simply an inevitable by-product of our statutory provisions precluding direct suit by an injured party against the tortfeasor's insurer (Ins. Code, § 11580, subd. (b)(2)) and forbidding the admission of evidence of insurance "to prove negligence or other wrongdoing (Evid. Code, § 1155). I do not share in this pessimistic assessment of the avenues available to resourceful counsel under our law. Neither of these statutes, in my view, would preclude an action for declaratory or other relief (whether by cross-complaint bifurcated for trial or by separate action after judgment) brought by an injured party against *his own* insurer to recover any "windfall" which that insurer may have reaped due to the operation of statutory setoff. Nor do I consider it entirely clear that such an action, if pursued by cross-complaint, would be precluded against the *opposing* insurer by the provisions of Insurance Code section 11580, subdivision (b)(2).[6] In any event efforts of this kind—none of which were pursued in the instant case—would result in an orderly determination of the issues raised. To conclude in these circumstances, as do the majority, that it would not "be appropriate to rely on the absence of evidence of insurance in the present record as a basis for barring the parties from obtaining relief..., (majority opn., *ante*, p. 142, fn. 6) is in my view wholly unjustified.

### III

The majority vacate the judgment below and remand the case to the trial court for further proceedings consistent with the views expressed in their opinion. In the course of such proceedings, it would appear, the court is to consider the insurance coverage of the respective parties before determining whether setoff should be ordered. Setoff should not be ordered, the trial court is advised, "in cases in which such a setoff will

---

[6]Although I, like the author of a recent practical work on the subject, have discovered "[n]o California case...that permits the personal injury plaintiff to bring a declaratory relief action [against a defendant's insurer] before judgment or settlement" (Melnick, Cal. Automobile Insurance Law Guide (Cont.Ed.Bar 1973) § 1.29, p. 24), I have difficulty concluding that today, in the atmosphere created by *American Motorcycle Assn.* v. *Superior Court* (1978) 20 Cal.3d 578 [146 Cal.Rptr. 182, 578 P.2d 899], a cross-complaint of the indicated variety—to be tried in bifurcated proceedings—would be rejected out of hand. An injured party's right to discover the existence and limits of a defendant's insurance is, of course, well-established. (*Laddon* v. *Superior Court* (1959) 167 Cal.App.2d 391, 395 [334 P.2d 638]; see generally Witkin, Cal. Evidence (2d ed. 1966) pp. 900-902.)

defeat the principal purpose of California's financial responsibility law and will provide an inequitable windfall to an insurance carrier at the expense of the carrier's insured." (Majority opn., *ante*, p. 143.)

It is apparent of course that the question whether any particular case does or does not meet the majority's standard (and therefore whether a setoff will or will not be ordered) is a matter of concern not only to the injured parties themselves, but to any insurers which may have issued applicable policies. Such insurers, however, are not parties to the action—nor can they be brought in by the existing parties under the majority's reading of section 11580, subdivision (b)(2) of the Insurance Code. Several questions arise: (1) Is it contemplated that the indicated determination is to be made without giving the affected insurers an opportunity to appear and be heard—even though the insurers are presumably to be bound by the collateral estoppel effects of the judgment? (2) If not, are insurers to be permitted to *themselves* join the action in some fashion when there appears to be a possibility of setoff? (3) If so, will their obligation to defend in such actions have the effect of requiring them to engage two attorneys—one to defend the insured and the other to represent their own interests, which are diametrically opposed to those of the insured insofar as setoff is concerned?

The majority answer none of these questions, although their resolution will, I suggest, be of signal importance on remand in the instant case and in all future cases of this kind.[7]

## IV

The basic obligation undertaken by an insurer in an automobile liability policy is to pay on behalf of the insured all sums, up to the stated policy limit, which the insured becomes legally liable to pay as damages arising out of an automobile accident. (See generally 1 Long, The Law of Liability Insurance (1978 ed.) §§ 1.02, 1.03, pp. 1-4, 1-5;

---

[7]It is significant to note in this respect that the case of *Stuyvesant Ins. Co. v. Bournazian* (Fla. 1977) 342 So.2d 471, so heavily relied upon by the majority, involved none of these problems. Not only were the insurers joined as parties under a specific statutory provision permitting the injured parties to proceed directly against them (Fla. Stat. (1975) § 624.605 (1)(b)), but the rule announced, whatever its failings in other respects, was purely mechanical in operation, precluding setoff in all cases involving insurance to the extent of coverage. Such a rule, of course, does not involve the insurer in the questions of public policy and fairness which will concern the court under the majority's standard.

Melnick, Cal. Automobile Insurance Guide, *supra*, §§ 2.1-2.2, pp. 27-28.)[8] "This means that the insurer must *discharge the liability of the insured*, within the policy limits, even though the claim could not have been collected from the insured by reason of his insolvency." (*Shapero* v. *Allstate Ins. Co.* (1971) 14 Cal.App.3d 433, 438 [92 Cal.Rptr. 244], italics added.)

The indicated "liability," of course, is that which, following a determination pursuant to applicable legal principles, the insured would *himself* be obliged to discharge if he were not protected by insurance. In the instant case there is only one party subject to such "liability." That is defendant Herrmann; her "liability" is in the sum of $54,400. If she is not protected by insurance, she will be liable to pay that amount herself. If she is fully protected by insurance—i.e., if she has paid premiums supporting an insurer's promise to discharge liability of that amount—it is the insurer's contractual obligation to pay it, whether or not she could have done so herself. If she is protected by insurance, but not in an amount sufficient to pay the whole "liability," the insurer is under a contractual obligation to pay up to the policy limits, leaving her liable for the remainder.

The majority propose to work a radical change in the above-described contractual relationship in all automobile accident cases involving mutual injury to insured parties. This they do largely in the name of public policy, invoking the principle announced in *Barrera* v. *State Farm Mut. Automobile Ins. Co.* (1969) 71 Cal.2d 659 [79 Cal.Rptr. 106, 456 P.2d 674] and related cases—a principle which they, quoting from a noted commentator, summarize as one seeking "'to assure that the victim be actually compensated for his tort loss instead of having merely an empty claim against a judgment-proof defendant....'" (Majority opn., *ante*, p. 139 ) Such "actual compensation," they reason, does not occur if setoff is applied in the case of fully insured parties who have both suffered injury in an automobile accident, for the party having the lesser amount of fault-discounted damages will recover nothing, while the oth-

---

[8]Although there is no statutory policy language, the insuring clause in all policies of automobile liability insurance is substantially the same. The Insurance Commissioner, in his amicus curiae brief, sets forth the following typical policy provisions: (1) "To pay all damages the insured becomes legally obligated to pay because of: (a) Bodily injury to any person...." (2) "...if you become legally obligated to pay damages resulting from [enumerated risks] we will pay for such damages." (3) "The company will pay on behalf of the insured all sums which the insured will become legally obligated to pay as damages because of bodily injury or property damage arising out of...." (4) "We will pay damages for bodily injury or property damage for which any covered person becomes legally responsible because of an auto accident."

er party will receive only the difference between his fault-discounted damages and those of the first party. Each party's insurer, it is concluded, reaps a "windfall" in an amount equal to the fault-discounted damages which the less damaged party would have recovered absent setoff—i.e., the amount by which each party's recovery is "reduced."

I have some difficulty with this line of reasoning. It is important to recognize, I think, that the application of setoff in a situation involving full insurance coverage yields to the respective parties the same ultimate recovery as each would receive in a situation of mutual solvency where no insurance is involved; how it is possible to speak of a "reduction" of recovery in these circumstances quite frankly eludes me. The true difference in the situation involving full insurance, of course, is that each party is not required to resort to his own assets in order to pay what is due. This is the very protection which a party purchases by buying liability insurance.[9]

The majority, however, would essentially convert what is protection against liability to *third parties* into protection against injury to the *insured himself*—i.e., would essentially convert liability coverage into first party coverage—to the extent of any possible setoff.[10] Public policy, we are told, requires us to look beyond the contractual arrangements of the parties in order to assure that "the victim be actually compensated for his tort loss." What we are not told, however, is why the same public policy, if applied in this fashion, should not carry us further still. Jess, after all, has suffered damages of $100,000, not merely $60,000, as a result of an automobile accident of which the negligence of Herrmann was a proximate cause. If Herrmann is fully insured, does not the reduction of Jess's recovery to $60,000 result in a "windfall" to Herrmann's insurer in the amount of $40,000? Why indeed should the insurer be permitted to take advantage of the fact that the party injured due to the insured's negligence was himself at fault to some degree?

---

[9] I consider here only the basic liability aspect of an automobile policy, not those aspects of the normal policy (such as medical payments and uninsured motorist) which are designed to provide first-party protection.

[10] Thus, if no setoff is ordered, Herrmann's insurer (assuming full coverage) will pay Jess $60,000—rather than the $54,400 for which Herrmann herself would be responsible in an action between her and Jess in which each was uninsured but solvent. Jess's insurer will pay $5,600—even though its insured would be wholly without liability if she were uninsured. The out-of-pocket payment of each insurer, then, is precisely equal to the sum of (1) the amount of liability which would otherwise attach to its insured, *plus* (2) the amount by which its insured's own damages would be uncompensated due to the application of setoff in the determination of such liability.

The answer to this line of reasoning is of course clear: The insurer undertakes, to the extent of policy limits, to protect the insured from *liability*, not to make whole any person who may be damaged by the insured's negligence. The question of whether such *liability* exists is one for the courts, to be determined in light of established legal principles applicable to the parties *inter se*. Because the system of tort liability in this jurisdiction is one based upon *fault* (see generally *Li* v. *Yellow Cab Co.* (1975) 13 Cal.3d 804 [119 Cal.Rptr. 858, 532 P.2d 1226, 78 A.L.R.3d 393]; cf. *Daly* v. *General Motors Corp.* (1978) 20 Cal.3d 725 [144 Cal.Rptr. 380, 575 P.2d 1162]), the liability of the insured is subject to discount to the extent that a portion of total fault for the injury-producing occurrence is attributable to the injured party himself —and the insurer's obligation, being tied to *liability*, is accordingly limited. No one, I venture to say—at least no one not committed to the judicial imposition of a system of liability without fault—would seriously suggest that the insurer thereby reaps a "windfall." The insurer simply awaits the determination of liability, then fulfills its obligation to discharge that liability to the extent of policy limits.

I have great difficulty understanding why any different reasoning should apply in the instant case. The insurer undertakes to discharge its insured's *liability* to the extent of policy limits. Under present law that *liability* is determined after the application of mandatory setoff. To suggest that a "windfall" thereby accrues to the insurer is in my view to say that whenever the application of established legal principles to determine the respective *liabilities* of insured parties results in a saving to the insurer, any gain it derives thereby is in some sense undeserved, if not ill-gotten. With this I cannot agree.

V

None of the foregoing, of course, forecloses proper legislative action. If the Legislature in its wisdom should determine that parties injured in automobile accidents are entitled to protections in addition to those afforded them by their own or other applicable insurance contracts—or indeed that tort *liability* is to be assessed in some fashion other than that presently obtaining—it lies within the power of that body to act accordingly. The legislative body is peculiarly fitted not only to assess the equity and wisdom of present law as compared with all alternative approaches, but also to include in its consideration the effects, both immediate and long range, which the adoption of any such alternative

might have on such matters as insurance rates and costs; such efforts, it appears, are presently ongoing.[11] This court, on the other hand—limited in its proper institutional function to the consideration of individual cases brought before it—is denied such breadth of vision and its concommitant range of available solutions. As the opinion of the majority so eloquently demonstrates, to stray beyond our proper sphere is to invite confusion and uncertainty into the law.

I would affirm the judgment.

Clark, J., and Richardson, J., concurred.

---

[11]Among the measures pending before the Legislature is a bill which, if enacted, would add a new section to the Code of Civil Procedure incorporating the provisions of section 3 of the Uniform Comparative Fault Act. (Assem. Bill No. 1783 (1979-1980 Reg. Sess.) § 3; see 12 West's U.Laws Ann. (1979 Supp.) Civ. Proc. & Remedial L., U.Comparative Fault Act, § 3, p. 31.) The adoption of this section, which approaches the problem through affording the insured a right to recover from *his own* insurer the amount by which its obligation has been reduced by setoff, was recommended in a recent report prepared under the auspices of the Joint Committee on Tort Liability. (Fleming, *Report to the Joint Committee of the California Legislature on Tort Liability on the Problems Associated with American Motorcycle Association v. Superior Court* (1979) 30 Hastings L.J. 1464, 1470-1471.)