CROCKER NATIONAL BANK and
Crocker National Corporation,
Plaintiffs,

v.

ROCKWELL INTERNATIONAL CORPORATION, Lehman Brothers Kuhn Loeb Incorporated; Singer Hutner Levine & Seeman, P.C., and Singer, Hutner, Levine & Seeman, a partnership, Defendants.

LEHMAN BROTHERS KUHN LOEB INCORPORATED, Counterclaimant,

v.

CROCKER NATIONAL CORPORATION,
Counterdefendant.

No. C–81–4099 SC.

United States District Court,
N.D. California.

Oct. 22, 1982.

**48**

Robert D. Raven, Morrison & Foerster, San Francisco, Cal., for plaintiffs.

D. Richard Urdan, Graham & James, San Francisco, Cal., David I. Goldblatt, Proskauer, Rose, Goetz & Mendelsohn, New York City, for defendants Singer, Hunter, Levine & Seeman.

Paul A. Renne, Cooley, Godward, Castro, Huddleson & Tatum, San Francisco, Cal., Cleary, Gottlieb, Steen & Hamilton, New York City, for defendant Lehman Brothers Kuhn Loeb Inc.

E. Judge Elderkin, Brobeck, Phleger & Harrison, San Francisco, Cal., Richard Ney, Chadbourne, Parke, Whiteside & Wolff, New York City, for defendant Rockwell Intern.

ORDER

CONTI, District Judge.

This case stems from a complicated set of transactions involving the leasing of computers by the now bankrupt O.P.M. Leasing Services, Inc. ("OPM") to defendant Rockwell International Corporation ("Rockwell"). In order to finance the acquisition of equipment OPM marketed, through defendant Lehman Brothers Kuhn Loeb Inc. ("Lehman"), an investment package to financial institutions, including defendant Crocker National Bank ("Crocker Bank"). A key issue in the case, not relevant to the present motions, is whether those packages constitute securities or loans. Defendant Singer, Hunter, Levine & Seeman, the predecessor of defendant Singer, Hunter, Levine & Seeman, P.C., acted as legal counsel to O.P.M.

Plaintiff Crocker Bank purchased some of the O.P.M. investment packages through Lehman and now alleges that it suffered damages of approximately $17 million. Plaintiff Crocker National Corporation, the parent of Crocker Bank, is the assignee of a portion of Crocker Bank's claims against Lehman.

Plaintiffs allege a number of causes of action against all defendants, including violations of federal and state securities laws, common law fraud, and violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961–1968. In addition, Crocker National asserts a claim for set-off against Lehman alone and Lehman has counterclaimed on the ground that no set-off is available.

There are now essentially three motions before the court:

(1) Defendants have each moved to dismiss the RICO claims. These motions will be treated as a single motion.

(2) Lehman's motion for summary judgment on the set-off claim, the seventeenth claim of the complaint, and its related counterclaim.

(3) Lehman's motion for leave to file a third-party complaint.

**THE RICO CLAIMS:**

Defendants have moved to dismiss plaintiffs' RICO claims on the grounds that (1) some nexus to organized crime or "misconduct typical of organized crime" is required; (2) plaintiffs must allege a "distinct" injury arising from the predicate acts; and (3) anti-competitive injury is required.

The standard to be applied in ruling on a motion to dismiss for failure to state a claim is well established. "[A] complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief," *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101, 2 L.Ed.2d 80 (1957), and all allegations in the complaint must be construed in favor of the plaintiff, *De La Cruz v. Tormey,* 582 F.2d 45, 48 (9th Cir. 1978), *cert. denied,* 441 U.S. 965, 99 S.Ct. 2416, 60 L.Ed.2d 1072 (1979).

■ It is clear that Congress intended RICO to aid, if not accomplish, the elimination of organized crime in the United States. Organized Crime Control Act of 1970, Pub.L. No. 91–452, Sec. 904(a), 84 Stat. 922, 947 (1970). Congress did not, however, limit the scope of RICO to persons connected with organized crime, *United States v. Campanale,* 518 F.2d 352, 363–64 (9th Cir.1975), or even to those activities that are commonly thought of as racketeering, *United States v. Thordarson,* 646 F.2d 1323, 1328, n. 10 (9th Cir.1981). Instead, Congress focused on particular activities and provided remedies against persons engaging in them.

Thus, RICO prohibits "any person" involved in an "enterprise" engaged in interstate commerce from participating in the enterprise's affairs through a "pattern of racketeering activity." 18 U.S.C. § 1962(c). An enterprise is any legal entity or "group of individuals associated in fact." 18 U.S.C. § 1961(4). An enterprise has engaged in a pattern of racketeering if it has committed at least two acts of racketeering in ten years. 18 U.S.C. § 1961(5). Acts of racketeering include securities fraud, wire fraud, and fraud involving use of the mails. 18 U.S.C. § 1961(1)(B). Treble damages are available to "any person injured in his business or property by reason of a violation of" 18 U.S.C. § 1962. 18 U.S.C. § 1964(c).

Plaintiffs have made all the necessary allegations. They allege the existence of at least one enterprise, the required acts of racketeering, and that they suffered damages as a proximate cause of the defendants' activities. Although plaintiffs' complaint does not exactly duplicate the language of 18 U.S.C. § 1964(c) regarding damages, this failure is not fatal; the allegations are sufficiently close to the statutory language to withstand a motion to dismiss.

There is no indication from the statute itself that congress intended RICO to be limited in any of the ways defendants suggest. On its face RICO is not limited to persons or activities commonly associated with organized crime, and the Court of Appeals for the Ninth Circuit has refused to apply such a limitation. *United States v. Thordarson,* 646 F.2d at 1328 n. 10; *United States v. Campanale,* 518 F.2d at 363–64.

■ Likewise, there is no indication from the statutory language that RICO remedies only anti-competitive injury. Rather, the legislative history indicates that harm to individual legitimate businesses, such as the plaintiffs' alleged investment losses, as well as general harm to competition, was a congressional concern. Organized Crime Control Act of 1970, Pub.L. No. 91–452, Sec. 904(a), 84 Stat. 922, 947.

■ Defendants' argument that the "by reason of" language of 18 U.S.C. § 1964(c) limited recovery to damages distinct from those caused by the predicate acts does not withstand analysis. The key purpose of RICO's civil remedy is to "divest the association of the fruits of its ill-gotten gains." *United States v. Turkette,* 452 U.S. 576, 585, 101 S.Ct. 2524, 2530, 69 L.Ed.2d 246 (1981). This purpose would be severely undermined if persons who suffered direct harm from racketeering activity as defined by the statute could not recover in the absence of a showing of some "special"

**50**

harm or some overall anti-competitive effect. Such a rule would leave money derived from actions prohibited by RICO precisely where Congress did not intend it to remain, in the hands of RICO violators.

Finally, defendants' proposed limits are largely unworkable. They suggest no reasoned way to determine what activities are commonly associated with organized crime or what type of injuries are distinct to RICO.

Courts have acknowledged that RICO has a broad reach. *United States v. Thordarson,* 646 F.2d at 1329 n. 10. Defendants' arguments amount to an assertion that for some reason this case is not within that reach, but they have not established a way to distinguish this case from others and have not shown that Congress intended the result they seek.

█ Plaintiffs' allegations are precisely what the statutory language requires. Dismissal is not appropriate.

THE SET–OFF CLAIM:

Crocker National became obligated in October 1981 to pay Lehman approximately $2.675 million for investment banking services. Although Crocker National did not directly purchase any of the O.P.M. investment packages, it is now the assignee of Crocker Bank's claims against Lehman arising out of the April 8, 1981, sale. Crocker National alleges that the value of the assigned claims exceeds $2.675 million.

In the seventeenth claim for relief, Crocker National seeks a declaratory judgment that it is entitled to set-off its claims against Lehman and that, therefore, it has no current obligation to Lehman. Lehman has counterclaimed for the amount it claims Crocker National owes it, and now seeks summary judgment on the set-off claim and its counterclaim.

Summary judgment is proper only where there is no issue of material fact or where, viewing the evidence and the inferences that may be drawn in the light most favorable to the non-moving party, the movant is clearly entitled to prevail as a matter of law. *Radobenko v. Automated Equipment Corp.,* 520 F.2d 540, 543 (9th Cir.1975). On a motion for summary judgment, the trial court does not try issues of fact. Examining the entire record, it decides the limited question of whether any factual issue exists. *Id.* The moving party has the burden of showing the absence of a genuine issue as to any material fact. *Adickes v. Kress & Co.,* 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970). The court finds summary judgment appropriate here.

There are two issues involved in Lehman's motion: (1) whether New York or California law applies; and (2) whether Crocker National is entitled to assert a set-off under the applicable law.

█ Federal courts apply the choice of law rules of the forum state. *Denny v. American Tobacco Co.,* 308 F.Supp. 219, 221 (N.D.Cal.1970). California applies its own law unless another state has a genuine and particular interest in having its own law apply. *Hurtado v. Superior Court,* 11 Cal.3d 574, 581–82, 114 Cal.Rptr. 106, 522 P.2d 666 (1974). The court finds that California law applies here.

█ Crocker National relies on section 431.70 of the California Code of Civil Procedure, which provides in relevant part:

Where cross-demands for money have existed between persons at any point in time when neither demand was barred by the statute of limitations, and an action is thereafter commenced by one such person, the other person may assert in his answer the defense of payment in that the two demands are compensated so far as they equal each other, notwithstanding that an independent action asserting his claim would at the time of filing his answer be barred by the statute of limitations.

Crocker National argues that under this provision it has an automatic right to set-off.

Section 431.70 is the successor of California Code of Civil Procedure section 440. Section 431.70 "continues the substantive

effect" of former section 440. Cal.Civ.Proc. Code § 431.70 Legislative Committee Comment—Senate. Section 440 has been described by California courts as "automatic"; that is, two existing demands for money are deemed paid to the extent they are equal. *See Kruger v. Wells Fargo Bank,* 11 Cal.3d 352, 362, 113 Cal.Rptr. 449, 521 P.2d 441 (1974); *Hauger v. Gates,* 42 Cal.2d 752, 755, 269 P.2d 609 (1954).

Nevertheless, it is clear that section 431.-70 is not automatically applied by the courts. The California Supreme Court has recently stated that the section does not establish "an ironclad setoff rule that must be invariably applied notwithstanding the equities of the case or potential conflict with other state policies." *Jess v. Hermann,* 26 Cal.3d 131, 135, 161 Cal.Rptr. 87, 604 P.2d 208 (1979). The statute essentially codifies the equitable doctrine of set-off, and has not been applied where circumstances or policy dictated otherwise. *Id.* at 142–43, 161 Cal.Rptr. 87, 604 P.2d 208; *see Erlich v. Superior Court,* 63 Cal.2d 551, 555–56, 47 Cal.Rptr. 473, 407 P.2d 649 (1965). Therefore, the court finds that Crocker National is not automatically entitled to a set-off.

Further, the court finds that set-off is not warranted on the facts of this case. It is not disputed that Crocker National has incurred an obligation to Lehman. Its claim against Lehman, however, is vigorously disputed and involves complicated issues that will require some time to resolve. Although setting-off an unsettled, unliquidated claim against a certain debt may be appropriate in some cases, it is not here. Accordingly, Lehman's motion for summary judgment is granted.

Lehman has requested that a judgment on the set-off claim be entered pursuant to Rule 54(b) of the Federal Rules of Civil Procedure. The court finds that a Rule 54(b) judgment is warranted, and an appropriate judgment will be entered. The judgment will be stayed for 30 days.

MOTION FOR LEAVE TO FILE THIRD PARTY COMPLAINT:

The court finds that there will be no undue prejudice due to the addition of Lehman's third-party complaint and therefore grants the motion to file. The parties are cautioned, however, that this case will not be slowed due to the addition of new parties. Further, the court finds it appropriate to sever the third-party claims from the main case; these claims will be addressed, if necessary, only after the main case has been determined.

In accordance with the foregoing, it is hereby ordered that:

(1) The motion of all defendants to dismiss the RICO claims is denied;

(2) Lehman's motion for summary judgment is granted; and

(3) Lehman's motion for leave to file a third-party complaint is granted; and

(4) All third-party claims are severed.