Filed 1/11/21  Kim v. PCP-Sundance CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| YOUNG KIM et al.,<br><br>    Plaintiffs and Respondents,<br><br>    v.<br><br>PCP-SUNDANCE, LP,<br><br>    Defendant and Appellant. | D076510<br>D076799<br><br><br>(Super. Ct. No. 37-2019-00019492-CU-PA-CTL) |
| PCP-SUNDANCE, LP,<br><br>    Plaintiff and Appellant,<br><br>    v.<br><br>YOUNG KIM et al.,<br><br>    Defendants and Respondents. | D076610<br><br><br>(Super. Ct. No. 37-2019-00022741-CU-PA-CTL) |

APPEALS from judgments and orders of the Superior Court of San Diego County, John S. Meyer, Judge.  Affirmed.

Rudderow Law Group, Daniel T. Rudderow and Chris C. Chapman for Plaintiff/Defendant/Appellant PCP-Sundance, LP.

Simpson Delmore Greene, John A. Simpson and Ross M. Poole for Plaintiffs/Defendants/Respondents Young Kim and Hwa Kim.

## INTRODUCTION

These consolidated appeals by PCP-Sundance, LP (PCP) arise from an arbitration PCP initiated against Young Kim and Hwa Kim (together, the Kims) under an indemnity agreement the parties entered into in connection with a mobile home park the Kims sold to PCP. PCP sought approximately $1.75 million in damages, yet recovered only about $3,400 on claims the arbitrator found were undisputed. Thus, although PCP obtained a net recovery, the arbitrator found the Kims were the prevailing parties and awarded them about $78,000 in attorney fees and costs. The arbitrator offset PCP's damages award against the Kims' fees/costs recovery, and provided for only a net recovery to the Kims of about $75,000.

The Kims filed a petition in the trial court seeking to confirm the award. PCP filed a separate petition under a new case number seeking to vacate the award on the grounds the arbitrator exceeded his authority (Code Civ. Proc., § 1286.2, subd. (a)(4)),[1] and that the award was procured by fraud and undue means (*id.*, subd. (a)(1)), or in violation of fundamental fairness principles. Alternatively, PCP sought to correct the award (§ 1286.6, subd. (c)) to eliminate the allegedly improper offset.

The trial court granted the Kims' petition and entered judgment in their favor in the case they filed, and denied PCP's petition and entered a judgment of dismissal in the case PCP filed. The court thereafter awarded the Kims about $30,000 in attorney fees and costs incurred in confirming the award, and about $3,000 in interest that accrued on the award between the

---

[1] Undesignated statutory references are to the Code of Civil Procedure.

2

arbitrator's issuance of it and the court's entry of judgment (postaward, prejudgment interest).[2]

PCP appeals the judgments and postjudgment orders.

PCP raises three challenges arising from the judgments. First, PCP challenges the procedure (but purportedly not the underlying factual findings) by which the arbitrator determined the Kims were the prevailing parties. Second, assuming the trial court properly confirmed the award, PCP alternatively contends the court erred by not "correcting" the award to eliminate the arbitrator's offset of PCP's damages award against the Kims' attorney fees/costs award. Third, PCP contends the trial court erred by failing to issue a statement of decision explaining its rulings granting the Kims' petition and denying PCP's.

PCP raises two challenges to the trial court's postjudgment orders. First, PCP contends the Kims were not entitled to recover postaward, prejudgment interest for a variety of procedural and substantive reasons. Second, PCP contends the trial court erred by awarding the Kims a "grossly excessive" amount of attorney fees and costs incurred in confirming the arbitration award.

For reasons we will explain, we conclude all of PCP's contentions lack merit. Accordingly, we affirm the judgments and postjudgment orders.

---

[2]     The Kims filed duplicative motions for fees/costs/interest in each of the superior court cases, which the trial court granted in virtually identical minute orders. For readability, we sometimes refer to the duplicative motions and orders in the singular form.

3

## FACTUAL AND PROCEDURAL BACKGROUND

### Background[3]

In October 2015, the Kims entered into an agreement to sell to PCP a mobile home park in Lemon Grove (the park). The parties used a standard form purchase agreement (the PSA).

PCP is "an investment company specializing in the purchase and operation of mobile home parks." Before the close of escrow, PCP performed extensive due diligence on many aspects of the park's financial and physical condition, "including [by] examining voluminous documents concerning rent revenue and expenses, . . . walking the property," and "retain[ing] the services of expert consultants." Because PCP "was a sophisticated organization dedicated to the purchase and operation of mobile home parks," it "was or should have been apparent to" PCP that the park "was a lower end property of single wide trailers, whose tenants were economically challenged."

"During the many years [the Kims] owned the park, [they] made improvements to the electrical and sewer systems," undertook reasonable security measures, and properly repaired or maintained common area facilities.

"Before the close of escrow on February 17, 2016, during the four-month due diligence period, through disclosures and investigation, [PCP] became aware that there were several potential problems, which were not

---

[3] We base our background summary largely on the factual summary in the arbitrator's final arbitration award. Additionally, we note that although it appears the arbitration hearing was reported, the appellate record contains only about *10 pages* of excerpts from partial reporter's transcripts of the *three-day* hearing that were attached to various materials the parties filed in the trial court.

4

anticipated in the original sale agreement.  PCP requested the Kims to reduce the sale price by about $400,000, but they refused.  To complete the sale, the Kims agreed to provide certain concessions to [PCP] in a Special Indemnity Agreement (SIA)."

"The SIA focused on compensating PCP for problems [it] had identified in [its] due diligence.  PCP was especially concerned with the costs of bringing unlawful detainer lawsuits and other costs related to such lawsuits" for " 'tenants with past-due balances as of the "Closing" of the PSA.' "  The parties expressly negotiated and agreed that the SIA would not cover lost income, lost leasing opportunities, or costs of re-letting.

The SIA also provided for "indemnity in third party proceedings" (capitalization omitted) arising from claims by tenants regarding the condition of the park or by the park's terminated property manager.

The SIA included an arbitration provision[4] and an attorney fees provision.[5]

---

[4]    The arbitration provision states:  "ln the event the parties are unable to resolve a dispute as provided above, the parties shall immediately thereafter submit such dispute to arbitration for binding resolution.  The arbitration shall be through and according to the rules of the American Arbitration Association, commercial arbitration.  The arbitrator's decision shall be final and any party thereto may confirm and, if necessary, enforce such award in the Superior Court for Orange or San Diego Counties, California."

[5]    The attorney fee provisions states:  "ATTORNEYS' AND EXPERT FEES AND COSTS.  In the event of any claim or dispute arising out of this Agreement, or a breach of any of the covenants, obligations, or indemnities contained in this Agreement, the prevailing party in such claim, dispute, or breach shall be entitled to have and recover from the losing party, in addition to relief obtained, its reasonable attorneys' and expert fees and costs incurred in connection with such dispute, claim or breach, whether incurred in connection with litigation or arbitration (but not mediation or conciliation)."

**The Arbitration**

In June 2018, PCP filed a demand for arbitration under the SIA (but not the PSA). The parties agreed to arbitrate their dispute according to commercial arbitration rules of the American Arbitration Association (AAA). Retired judge Ronald Prager served as arbitrator (Arbitrator).

### PCP's Claims

PCP sought $1,754,428.50 for breach of the SIA. Some of the items for which PCP sought indemnity related to costs incurred evicting six park tenants who allegedly were in arrears at the close of escrow. But the vast majority related to claims for lost rent and utility payments from tenants; advertising expenses; security services; upgrades to the park's sewer and electrical systems because the Kims "fail[ed] to disclose the true condition[s] of the . . . system[s]"; and a claimed "overpayment in the purchase price for the park" (bolding and underlining omitted).

On its overpayment claim, PCP sought more than $1.6 million. PCP accused the Kims of perpetrating "a massive fraud" by "[lying] about the condition and value of [the park]," "conceal[ing] the fact that the park . . . was actually plagued with numerous problems and issues," and "falsely represent[ing]" the park's annual income. PCP maintained it "relied upon [the Kims'] representations."

### Exchange of Proposed Awards

At an arbitration readiness conference conducted about three weeks before the arbitration hearing, the Arbitrator directed the parties to submit proposed arbitration awards before the start of the three-day hearing.

PCP timely submitted its proposed award, reiterating its claim for approximately $1.75 million in damages.

The Kims submitted their proposed award one day late, without objection from PCP. The Kims' proposed award conceded PCP was entitled to recover $3,396.25 in eviction-related expenses for three of the six park tenants whom PCP alleged were in arrears at the close of escrow. The Kims' proposed award rejected the remainder of PCP's claims.

### *Hearing and Awards*

The arbitration hearing was held on January 7-9, 2019.

About one week after the hearing concluded, the Arbitrator issued an Interim Arbitration Award (the Interim Award) awarding PCP $3,396.25 in damages for expenses incurred evicting the three park tenants the Kims had acknowledged were in arrears at the close of escrow. The Arbitrator found PCP's remaining claims were "not within the scope of the SIA . . . because the Kims did not cause the charges to be incurred, or because there was no evidence that [the] claims are supported by any evidence."

After receiving further briefing, the Arbitrator determined the Kims were the prevailing parties for purposes of awarding attorney fees and costs. The Arbitrator explained in his Final Arbitration Award (the Final Award) that because the Kims conceded PCP was entitled to recover the $3,396.25 it received as damages (out of the $1.75 million it requested), the Kims had prevailed on all the *disputed* issues, which the Arbitrator reiterated were "not within the scope of the SIA . . . ." The Arbitrator awarded the Kims $78,236.43 in attorney fees and costs.

In the Final Award, the Arbitrator offset the $3,396.25 in damages the Kims owed to PCP against the $78,236.43 in attorney fees and costs PCP owed to the Kims, for a net recovery to the Kims of $74,840.18.

## Trial Court Proceedings

### *Petitions to Confirm and Vacate/Correct*

About three weeks after the Arbitrator issued the Final Award, the Kims filed a petition in the superior court seeking to confirm it. About two weeks after that, PCP filed a response to the Kims' petition, and filed a separate petition (under a new case number) seeking to vacate or correct the Final Award. The trial court consolidated the cases, along with a separate lawsuit PCP had since filed against the Kims alleging fraud and contract claims under the PSA (but not the SIA).[6]

PCP argued the court should vacate, rather than confirm, the Final Award because the Arbitrator erred by relying on the Kims' untimely proposed award to determine they were the prevailing parties. Alternatively, if the court elected to confirm the award, PCP argued the court should correct it because the Arbitrator improperly offset the parties' recoveries and awarded the Kims a net recovery. PCP requested that the trial court issue a statement of decision.

After hearing argument, the trial court granted the Kims' petition and denied PCP's. The court explained its ruling in a three-page minute order.

The court thereafter entered separate judgments confirming the Final Award, and dismissing PCP's petition to vacate it.

### *Postjudgment Proceedings*

The Kims then moved to recover attorney fees ($32,918.50) and costs ($2,120.51) incurred in confirming the Final Award; and postaward,

---

[6] The appellate record contains many duplicative materials filed in the separate superior court cases. Except when necessary for clarity, we do not distinguish between the separate cases.

8

prejudgment interest ($2,890.50) for the period between issuance of the Final Award and entry of judgment. PCP opposed the motion.

After receiving extensive briefing and hearing argument, the trial court awarded the Kims $28,086 in attorney fees and $2,069.36 in costs (both slightly less than requested); and $2,890.50 in postaward, prejudgment interest.

## Appeals

PCP appeals (1) the judgment confirming the Final Award (appeal No. D076510); (2) the judgment dismissing PCP's petition to vacate or correct the award (appeal No. D076610); and (3) the postjudgment orders awarding the Kims attorney fees, costs, and prejudgment interest (appeal Nos. D076799 and D076610). We consolidated the appeals.

## DISCUSSION

### I. *CHALLENGES TO THE JUDGMENTS*

PCP raises three challenges arising from the judgments: (1) the trial court erred by confirming, rather than vacating, the Final Award; (2) alternatively, the trial court erred by failing to correct the Final Award to eliminate the offset of PCP's damages against the Kims' attorney fees and costs; and (3) the trial court erred by failing to issue a statement of decision. We explain, in turn, why each of these contentions is without merit.

### A. Confirming, Rather Than Vacating, the Final Award

PCP contends the trial court erred in confirming the Final Award because the Arbitrator exceeded his authority by relying on the Kims' untimely proposed award to determine they were the prevailing parties, which further caused the award to be procured by fraud or undue means. PCP further maintains the Arbitrator erred by applying a fraud analysis to breach of contract claims.

9

## 1. Background

At the arbitration readiness conference, the Arbitrator directed the parties to submit proposed arbitration awards as follows:

> "By the commencement of the arbitration, each side is to prepare a proposed arbitration award, analogous to a proposed statement of decision in a court trial."

On the first morning of the hearing, PCP submitted its proposed award. When the Arbitrator asked the Kims' counsel where his proposed award was, counsel responded, "We'll have it by the end of today." The Arbitrator responded, "Okay." PCP did not object.

Counsel proceeded to give opening statements. According to declarations the Kims' counsel later submitted to the trial court (to which PCP did not object), the Kims' counsel conceded during his opening statement "that the Kims did not dispute" that "PCP was entitled to reimbursement from the Kims" for expenses associated with the eviction of three specific park tenants who were in arrears at the close of escrow.

On the second morning of the hearing, the Kims' counsel personally served a proposed award on the Arbitrator and PCP's counsel. PCP did not object that the proposed award was untimely.

In their proposed award, the Kims conceded PCP was entitled to recover $3,396.25 in damages for expenses associated with evicting three tenants who were in arrears at the close of escrow. The proposed award also stated that "[b]ecause PCP . . . is awarded less than what it claimed against [the Kims], . . . [the Kims] are the prevailing party" entitled to attorney fees and costs under the SIA.

On the final day of the hearing, the Arbitrator asked the Kims' counsel how the Kims could be deemed the prevailing party if they had conceded they "owe some money." Counsel responded that "the prevailing party issue has to

10

be resolved post-award," but also observed preliminarily that the Kims could be deemed the prevailing party because PCP was "seeking . . . $1.7 million" but recovered only "$3,200," which "cannot be, under any analysis, evaluated as a prevailing party."

About one week after the hearing concluded, the Arbitrator issued his Interim Award awarding PCP $3,396.25 in eviction-related expenses for the three tenants the Kims had acknowledged were in arrears at the close of escrow. The Interim Award did not reference the Kims' proposed award.

Each side thereafter submitted a motion asking the Arbitrator to declare it the prevailing party and to award it attorney fees and costs. In its motion, PCP argued it was the prevailing party because it obtained a recovery of $3,396.25, while the Kims recovered nothing. In their motion, the Kims argued they were the prevailing party because PCP sought $1.75 million in damages on 29 claims, yet recovered only $3,396.25 on only a portion of those claims, which the Kims conceded "[f]rom the inception of arbitration."

The Arbitrator explained in the Final Award why he agreed the Kims were the prevailing parties:

> "In this case PCP made 29 claims totaling $1,754,428.50. At the arbitration, the Kims conceded claims relating to eviction costs for three tenants in arrears at the close of escrow totaling $3,396.25. However, the arbitrator decided all contested issues in favor of the Kims and against PCP. . . . Because the Kims prevailed on all the issues actually litigated at trial, even though the judgment of $3,396.25 is in favor of PCP, the Kims are entitled to attorney fees and expert witness costs under the terms of the [SIA]."

The Final Award did not reference the Kims' proposed award.

11

## 2. Legal Principles

Through the California Arbitration Act (§ 1280 et seq.), the Legislature has expressed a " 'strong public policy in favor of arbitration as a speedy and relatively inexpensive means of dispute resolution.' " (*Moncharsh v. Heily & Blase* (1992) 3 Cal.4th 1, 9 (*Moncharsh*).)  "To promote this alternative means of dispute resolution, the law minimizes judicial intervention in the proceedings, in part, by the doctrine of arbitral finality."  (*Jones v. Humanscale Corp*. (2005) 130 Cal.App.4th 401, 407.)

"Most legal errors in arbitration are not reviewable.  [Citations.]" (*Heimlich v. Shivji* (2019) 7 Cal.5th 350, 367 (*Heimlich*).)  "[B]oth because it vindicates the intentions of the parties that the award be final, and because an arbitrator is not ordinarily constrained to decide according to the rule of law, it is the general rule that, 'The merits of the controversy between the parties are not subject to judicial review.' [Citations.]  More specifically, courts will not review the validity of the arbitrator's reasoning.  [Citations.] Further, a court may not review the sufficiency of the evidence supporting an arbitrator's award.  [Citations.]" (*Moncharsh*, *supra*, 3 Cal.4th at p. 11.)

Section 1286.2, "which sets forth grounds for vacating an arbitration award, is an exception to the general rule precluding judicial review."  (*SWAB Financial, LLC v. E\*Trade Securities, LLC* (2007) 150 Cal.App.4th 1181, 1196 (*SWAB*).)  As relevant here, this statute authorizes a court to vacate an arbitral award when "[t]he award was procured by corruption, fraud or other undue means" (§ 1286.2, subd.(a)(1)), or when "[t]he arbitrators exceeded their powers and the award cannot be corrected without affecting the merits of the decision" (*id*., subd. (a)(4)).

A court may also vacate an arbitral award if there are "similar 'circumstances involving serious problems with the award itself, or with the

12

fairness of the arbitration process.' [Citations.] Otherwise, judicial corrections are limited to remedying 'obvious and easily correctable mistake[s],' 'technical problem[s],' and actions in excess of authority so long as the correction leaves the merits of the decision unaffected." (*Heimlich*, *supra*, 7 Cal.5th at p. 367; see *Moncharsh*, *supra*, 3 Cal.4th at pp. 11-13, 33.)

We generally review de novo a trial court's ruling confirming an arbitration award. (*Richey v. AutoNation, Inc.* (2015) 60 Cal.4th 909, 918, fn. 1 (*Richey*).) "However, we apply the substantial evidence test to the trial court's ruling to the extent it rests upon a determination of disputed factual issues." (*SWAB*, *supra*, 150 Cal.App.4th at p. 1196.)

### 3. Analysis

We conclude the Arbitrator did not exceed his authority by relying on the Kims' untimely proposed award to determine they were the prevailing parties, nor did doing so constitute fraud or undue means.

We begin by clarifying the scope of PCP's challenge. PCP makes clear in its briefing that it does *not* challenge the Arbitrator's *rationale* in concluding that *if* the Kims truly conceded PCP was entitled to recover all the damages it was ultimately awarded, then the Kims were the prevailing parties because they prevailed on all the *disputed* claims. Indeed, such a challenge would fail because "[a]n arbitrator's legal or factual error in determining which party prevailed may not be reversed." (*Heimlich*, *supra*, 7 Cal.5th at p. 367.) Instead, PCP challenges only "the means by which the [A]rbitrator" made that determination: by "improperly rel[ying] upon an untimely filed proposed arbitration award from the [Kims] as *the sole basis* to improperly find that the damages awarded . . . to PCP were never contested . . . ."

13

So clarified, PCP's challenge fails at the outset because the record does not support PCP's underlying factual predicate that the Arbitrator, in fact, relied on the Kims' untimely proposed award "as the sole basis for the finding that [they] were a prevailing party." First, the Arbitrator did not cite or reference the Kims' proposed award anywhere in the Interim or Final Awards. Rather, the Final Award merely states: "*At the arbitration*, the Kims conceded claims . . . totaling $3,396.25." (Italics added.) Second, the record shows that the Kims' counsel stated during his opening statement "that the Kims did not dispute" that "PCP was entitled to reimbursement from the Kims" for expenses associated with the eviction of three specific park tenants who were in arrears at the close of escrow. Similarly, the record shows the Kims' counsel again conceded during closing arguments "that the Kims are conceding that they owe PCP some money."

PCP argues that some excerpts from the reporter's transcript of the closing arguments indicate the Kims only *conditionally* conceded certain damages depending on how the Arbitrator might ultimately construe the SIA. To the extent PCP is challenging the Arbitrator's factual determination that the Kims truly conceded the damages "[a]t the arbitration," the challenge fails. (*Moncharsh*, *supra*, 3 Cal.4th at p. 11 ["a court may not review the sufficiency of the evidence supporting an arbitrator's award"].) And, in any event, because PCP has provided us with only *10 pages* of partial reporter's transcripts from a *three-day* hearing, PCP has not met its burden as the "appellant to demonstrate, *on the basis of the record presented to the appellate court*, that the trial court committed an error that justifies reversal." (*Jameson v. Desta* (2018) 5 Cal.5th 594, 609, italics added.)

Thus, PCP's claim fails as a factual matter. But even if it did not, it would fail on its legal merits.

14

An arbitrator exceeds his authority when he violates " 'specific restrictions' " in " 'the rules of arbitration.' " (*Emerald Aero, LLC v. Kaplan* (2017) 9 Cal.App.5th 1125, 1140 (*Emerald Aero*); see *Advanced Micro Devices, Inc. v. Intel Corp.* (1994) 9 Cal.4th 362, 367 (*Advanced Micro Devices*).) The parties agreed their arbitration would be governed by the AAA's commercial rules. Yet, PCP has not identified any specific AAA rule the Arbitrator violated by accepting the Kims' untimely proposed award.

The only AAA rule PCP cites is commercial arbitration rule R-23, which states:

> "The arbitrator *may* issue any orders necessary to enforce the provisions of Rule R-21 [Preliminary Management Hearing with the Arbitrator] and R-22 [Exchange of Information between the Parties] and to otherwise achieve a fair, efficient, and economical resolution of the case, including, but not limited to: [¶] . . . [¶]

> "(d) in the case of willful non-compliance with any order issued by the arbitrator, drawing adverse inferences, excluding evidence and other submissions, and/or making special allocations of costs or an interim award of costs arising from such non-compliance . . . ." (Italics added.)

PCP contends this rule "*require[d]*" the Arbitrator to enforce his deadline. (Italics added.) But the rule states that an arbitrator *may* issue orders to enforce compliance with other rules, not that the arbitrator *shall* or *must* do so. " 'Ordinarily, when a statute provides a court "may" do something, the statute is permissive, not mandatory, and grants the court a discretionary authority.' " (*Lo v. Lee* (2018) 24 Cal.App.5th 1065, 1071-1072.) We thus decline to read AAA's rule R-23 as *requiring* an arbitrator to enforce compliance with all deadlines. Rather, under the traditional approach, arbitrators generally "have discretion to extend deadlines given their 'wide latitude' to conduct arbitrations." (*Chelmowski v. AT&T Mobility, LLC* (N.D.

15

Ill., July 28, 2016, No. 15 C 10980) 2016 WL 8202738, at \*4; see *Sy First Family Ltd. Partnership v. Cheung* (1999) 70 Cal.App.4th 1334, 1342 ["Unless the parties otherwise agree, the rules of evidence and judicial procedure do not apply" in arbitration]; § 1282.2, subd. (d).)

The cases PCP cites to support its contention that the Arbitrator exceeded his authority are distinguishable because they either did not involve violation of an arbitration rule *at all* (see *Pacific Crown Distributors v. Brotherhood of Teamsters* (1986) 183 Cal.App.3d 1138, 1146 (*Pacific Crown*); *Baker Marquart LLP v. Kantor* (2018) 22 Cal.App.5th 729, 732, 737 (*Baker Marquart*)), or involved violation of a specific *nondiscretionary* arbitration rule (see *Emerald Aero, supra,* 9 Cal.App.5th at p. 1140 [allowing last-minute addition of substantial punitive damages claim violated specific AAA rules that "*require* a party to specify in his or her initial filing 'the relief sought and the amount involved,' and *require* the parties to provide written notice of any changes to this claim information," italics added]). Indeed, *Emerald Aero* is particularly instructive because the AAA rules at issue there used the mandatory words "*must*" and "*shall*" (*Emerald Aero,* at pp. 1140-1141, italics added),[7] whereas the rule PCP cites here (rule R-23) uses the permissive "may."

PCP maintains the Arbitrator also exceeded his authority by applying a fraud analysis to PCP's contract claim. PCP bases this assertion on the

---

[7] *Emerald Aero* quoted AAA rule R-6(a), which states, "Written notice of [a] change of claim amount *must* be provided to the AAA and all parties"; and AAA rule R-6(b), which states that "Any new or different claim or counterclaim . . . *shall* be made in writing and filed with the AAA, and a copy *shall* be provided to the other party, who *shall* have a period of 14 calendar days . . . to file an answer . . . ." (*Emerald Aero, supra,* 9 Cal.App.5th at pp. 1140-1141, italics added.)

16

following *two-line* passage from the *seven-page* Final Award: "It was or should have been apparent to [PCP], that [the park] was a lower end property of single wide trailers, whose tenants were economically challenged." This single, out-of-context snippet from the "[b]*ackground*" section of the Final Award falls flat for several reasons. First, we generally do not review an arbitrator's legal reasoning, even "where an error of law appears on the face of the award." (*Moncharsh*, *supra*, 3 Cal.4th at p. 28.) Second, the Arbitrator made clear in the "[a]*nalysis*" section of the Final Award that he was applying a contract analysis, explaining the disputed claims "are denied because they are *not within the scope of the SIA*" (italics added). PCP even acknowledges in its reply brief that "[t]he arbitrator stated in the final award it was ruling on the SIA, not fraud." Finally, the Arbitrator's fleeting reference to what PCP "was or should have been aware of" is understandable in light of PCP's extensive references to fraud concepts—that the Kims perpetrated "a massive fraud" by "conceal[ing]" and "falsely represent[ing]" things that PCP "relied upon"—in its own submissions to the Arbitrator.

Turning to PCP's claim that the Arbitrator's alleged reliance on the Kims' untimely proposed award constituted extrinsic fraud, undue means, or violated fundamental fairness principles, PCP again misplaces its reliance on *Pacific Crown*, *Baker Marquart*, and *Emerald Aero*.

The *Pacific Crown* court upheld the trial court's finding of extrinsic fraud based on a party's submission of a post-hearing brief that introduced a new issue on which the arbitrator ultimately ruled in that party's favor. (*Pacific Crown, supra*, 183 Cal.App.3d at p. 1146.) This required vacatur of the arbitrator's award because the post-hearing submission deprived the opposing party the " 'opportunity to present evidence in [the] arbitration' " to confront the new claim. (*Id.* at p. 1149.)

17

And the *Baker Marquart* court held that an arbitration award was obtained by undue means where the arbitration panel ruled in favor of the claimant by relying on information contained in the claimant's "ex parte 'confidential arbitration brief' that [the claimant] did not provide or otherwise reveal to [the respondent]" (*Baker Marquart*, *supra*, 22 Cal.App.5th at p. 732) until after the arbitration panel ruled in favor of the claimant and the claimant was seeking to confirm the award in court (*id.* at p. 737). This required vacatur of the arbitration award because the opposing party had "no true opportunity to respond [during the arbitration] to the new claims raised in the confidential brief." (*Id.* at p. 740.)

But unlike the aggrieved parties in *Pacific Crown* and *Baker Marquart*, PCP was not deprived of the opportunity to address new evidence or arguments during the arbitration. The Kims served their proposed award on PCP before the start of the second day of a three-day hearing. This afforded PCP two days' worth of opportunities to rebut with evidence or argument any new claims or theories the Kims introduced in their proposed award (e.g., by objecting during the hearing if the Kims appeared to dispute damages they purported to concede in their proposed award). Yet, PCP never objected, thereby waiving the Kims' noncompliance with the Arbitrator's deadline. (See *Hotels Nevada, LLC v. L.A. Pacific Center, Inc.* (2012) 203 Cal.App.4th 336, 353 [waiver principles apply in arbitration proceedings]; AAA commercial arbitration rule R-41 ["Any party who proceeds with the arbitration after knowledge that any provision or requirement of these rules has not been complied with and who fails to state an objection in writing shall be deemed to have waived the right to object."].)

PCP suggests it was excused from objecting when the Kims submitted their proposed award because PCP did not appreciate its significance until

the Arbitrator allegedly relied on it in rendering the Final Award. But PCP cites no legal authority to support this proposition. (See *San Diegans for Open Government v. San Diego State University Research Foundation* (2017) 13 Cal.App.5th 76, 106, fn. 17 [" ' "[the] appellant must present meaningful legal analysis *supported by citations to authority*," ' " italics added].) Moreover, PCP's premise is factually dubious because the Kims' proposed award expressly revealed its significance by stating the following: "Because PCP . . . is awarded less than what it claimed against [the Kims], the [Arbitrator] finds that [the Kims] are the prevailing party . . . entitled to recover its attorney's fees and costs . . . ."

Additionally, the fundamental fairness principles our court discussed in *Emerald Aero* are not implicated here. (*Emerald Aero*, *supra*, 9 Cal.App.5th at p. 1143.) The claimants in *Emerald Aero* initially sought $1 million in damages in their arbitration claim summary (*id.* at p. 1132), but increased their demand on the literal eve of the hearing (at 4:38 p.m., no less) to seek more than $10 million in compensatory damages and punitive damages of "a 'multiplier of three (3x) the actual damages' " (*id.* at p. 1135). The arbitrator ultimately awarded the claimants more than $30 million in damages. (*Id.* at p. 1135.) The trial court confirmed this award, finding that the notice served the afternoon before the hearing was sufficient. (*Id.* at p. 1137.)

Our court reversed. (*Emerald Aero*, *supra*, 9 Cal.App.5th at p. 1146.) Beyond the violation of specific, nondiscretionary AAA rules discussed above, our court found the claimants did not provide sufficient notice "under fundamental fairness principles." (*Id.* at p. 1141.) "First, in addition to the lack of notice of the punitive damages claim, the record [was] unclear whether [the respondent] had notice of several . . . critical hearings and orders in the case" that ultimately led to his default. (*Id.* at p. 1143.)

19

"Second, there was substantial ambiguity as to the amount of claimed compensatory damages" because the claimants initially sought $1 million in their arbitration claim summary, but $10 million in their damages brief. (*Ibid.*) Third, we found the AAA acted improperly by denying the respondent the opportunity to seek post-hearing relief from a new arbitrator (*ibid.*) after the previous arbitrator recused himself post-hearing from all AAA matters (*id.* at p. 1136). Finally, our court observed that "the amount of the damages award—approximately $30 million—warrant[ed] particular attention." (*Id.* at p. 1144.)

These fairness principles simply are not implicated here. The Kims did not drastically increase the amount of a claim at the virtual last minute. To the contrary, they conceded PCP was entitled to recover a precise amount of damages on specific claims. There was no dispute that PCP received actual notice of the Kims' concession, which their counsel personally served on PCP during the hearing. There were no administrative issues on AAA's behalf that precluded PCP from addressing the Kims' concession with the Arbitrator. Finally, the amounts of the conceded damages ($3,396.25) and the attorney fees/costs award ($78,236.43) simply are not of the magnitude that "warrant[ed] particular attention" in *Emerald Aero*. (*Emerald Aero, supra*, 9 Cal.App.5th at p. 1144.)

In sum, based on the limited grounds available for judicial review of final arbitration awards, PCP has not shown that the trial court erred in confirming the Final Award.

### B. Correcting the Final Award to Eliminate the Offset

PCP alternatively contends the trial court erred by failing to "correct" the Final Award because the Arbitrator's offset of PCP's damage award against the Kims' attorney fees and costs award is a correctible

20

"imperfect[ion] in a matter of form, not affecting the merits of the controversy."  (§ 1286.6, subd. (c).)  We disagree.

Parties to an arbitration agreement "have bargained for the relatively free exercise" of the arbitrator's "flexibility, creativity and sense of fairness" in choosing a remedy.  (*Advanced Micro Devices*, *supra*, 9 Cal.4th at p. 374.)  Thus, "unless specifically restricted by the agreement to following legal rules," arbitrators " 'are not bound to award on principles of dry law, but may decide on principles of equity and good conscience' " (*id*. at pp. 374-375), including by "grant[ing] equitable relief that a Court could not" (*id*. at p. 389).

Nothing prohibited the Arbitrator from offsetting the parties' competing recoveries.  First, the SIA's arbitration provision did not limit the Arbitrator's authority in this respect.  (See fn. 4, *ante*.)  Second, offsetting competing recoveries is a recognized equitable concept.  (See *Wade v. Schrader* (2008) 168 Cal.App.4th 1039, 1048 ["At common law, a setoff is based upon the equitable principle that parties to a transaction involving mutual debts and credits can strike a balance between them."]; *Jhaveri v. Teitelbaum* (2009) 176 Cal.App.4th 740, 753 ["The right of offset rests upon the inherent power of the court to do justice to parties appearing before it."].)  Finally, the AAA's commercial rules authorize arbitrators to " 'grant any remedy or relief that the arbitrator deems just and equitable and within the scope of the agreement.' " (*Cohen v. TNP 2008 Participating Notes Program, LLC* (2019) 31 Cal.App.5th 840, 871 (*Cohen*).)

PCP misplaces its reliance on *Jess v. Herrmann* (1979) 26 Cal.3d 131, 143 (*Jess*) to support the proposition that offset is available *only* when expressly authorized by statute or consented to by the parties.  The *Jess* court recognized the general availability of offset as an efficient means to " 'simply eliminate[ ] a superfluous exchange of money between the parties.' "  (*Id*. at

p. 137.) But recognizing the remedy has its roots in equity (*id.* at pp. 142-143), the court created an equitable exception limiting the remedy's availability in negligence cases involving comparative fault apportioned between adequately insured parties (*id.* at pp. 141-142). Those equitable concerns simply are not present here.

### C. Statement of Decision

PCP asserts the judgments must be reversed because the court refused to provide a statement of decision under section 1291.[8] We need not weigh in on the split of authorities regarding whether the trial court was required to issue one in this context,[9] because the court stated its minute order would constitute a statement of decision, and we conclude the comprehensive minute order adequately explained the legal and factual bases for the court's determination as to each principal controverted issue.

### 1. Background

When PCP opposed the Kims' petition to confirm the Final Award and filed a petition of its own seeking to vacate or correct it, PCP also filed a request for a statement of decision addressing the following questions:

> "(1) Should the arbitration award be vacated . . . ?
>
> "(2) Did the arbitrator prejudice PCP by allowing [the Kims] to submit an untimely proposed arbitration award contrary to the [arbitration readiness conference order]?

---

[8] Section 1291 states: "A statement of decision shall be made by the court, if requested pursuant to Section 632, whenever an order or judgment, except a special order after final judgment, is made that is appealable under this title."

[9] Compare *Metis Development LLC v. Bohacek* (2011) 200 Cal.App.4th 679, 687 (*Metis*) (statement of decision required) with *Rebmann v. Rohde* (2011) 196 Cal.App.4th 1283, 1294 (statement of decision not required).

"(3)  Did the arbitrator prejudice PCP when stating in the final award that the Kims conceded the $3,396.25 at the arbitration?

"(4)  As a result of this prejudice, did the arbitrator further prejudice PCP by finding that [the] Kims were a prevailing party even though the $3,396.25 was in fact disputed by [the Kims] throughout all three days of the arbitration as evidenced by the transcript of proceedings?

"(5)  Is there a defect in the form of the award by the offset applied by the arbitrator?"

The day before the hearing on the petitions, the trial court issued a three-page tentative ruling explaining why the court intended to grant the Kims' petition and deny PCP's.  First, the court explained the Arbitrator did not exceed his authority by receiving the Kims' untimely proposed award because PCP failed to identify any AAA rule that the Arbitrator violated.  Second, the court explained that the extrinsic fraud and undue means at issue in *Pacific Crown*, *supra*, 183 Cal.App.3d 1138 and *Baker Marquart*, *supra*, 22 Cal.App.5th 729 were not implicated here.  Third, the court rejected PCP's factual premise "that the Final Award made reference to the Kims' proposed arbitration award as the basis for determining the Kims were the prevailing party."  Fourth, the court rejected PCP's claim it was prejudiced by the Kims' untimely proposed award because (1) "PCP had the opportunity to object when the Kims submitted the proposed arbitration award . . . , but did not"; and (2) "PCP had the opportunity to object to the Kims' argument that they are the prevailing party based in part on the fact that they conceded the claims which form the basis for the award," which "was raised during the arbitration and in the motion for attorney fees."  Finally, the court denied PCP's alternative request to correct the Final Award, finding *Jess*, *supra*, 26 Cal.3d 131 distinguishable.

23

After hearing argument, the trial court indicated its tentative ruling would become the order of the court. PCP's counsel reminded the court that PCP had requested a statement of decision. The court responded that it did not believe it was required to provide one because there had not been a trial, but, in any event, the court stated its tentative ruling (later confirmed in a minute order) "*will be the statement of decision . . . .*" (Italics added.)

## 2. Legal Principles

If properly requested and required, a statement of decision must "explain[ ] the factual and legal basis for [the trial court's] decision as to each of the principal controverted issues at trial." (§ 632.) A statement of decision "will be deemed adequate 'if it fairly discloses the determinations as to the ultimate facts and material issues in the case.' " (*Altavion, Inc. v. Konica Minolta Systems Laboratory, Inc.* (2014) 226 Cal.App.4th 26, 45 (*Altavion*); see *Pannu v. Land Rover North America, Inc.* (2011) 191 Cal.App.4th 1298, 1314, fn. 12 [" 'the trial court is not required to respond point by point to issues posed in a request for a statement of decision' "].) " '[T]he term "ultimate fact" generally refers to a core fact, such as an essential element of a claim.' " (*Metis*, *supra*, 200 Cal.App.4th at p. 689; *Muzquiz v. City of Emeryville* (2000) 79 Cal.App.4th 1106, 1125 [" 'findings of ultimate facts necessarily include findings on all intermediate evidentiary facts necessary to sustain them. [Citation.]' "].) A "material issue" " 'is one which is relevant and essential to the judgment and closely and directly related to the trial court's determination of the ultimate issues in the case.' " (*R.E. Folcka Construction, Inc. v. Medallion Home Loan Co.* (1987) 191 Cal.App.3d 50, 53.)

"[A] trial court's error in failing to issue a requested statement of decision is not reversible per se, but is subject to harmless error review." (*F.P. v. Monier* (2017) 3 Cal.5th 1099, 1108; see *id.* at pp. 1114-1115.)

24

### 3. Analysis

The trial court's three-page minute order, which the court stated "will be the statement of decision," fulfilled the purposes of a statement of decision because it " 'fairly disclose[d] the determinations as to the ultimate facts and material issues in the case.' " (*Altavion, supra*, 226 Cal.App.4th at p. 45.)

By explaining why it was granting the Kims' petition and denying PCP's, the trial court adequately addressed the material issue posed in PCP's request for a statement of decision:  whether "the arbitration award [should] be vacated."

The court also adequately addressed PCP's subsidiary questions.  The court explained it rejected PCP's prejudice claim because "PCP had the opportunity to object . . . , but did not," and PCP ultimately addressed the issue in its briefing to the Arbitrator about who was the prevailing party.  By explaining that the record did not support PCP's claim that the Kims' proposed award was the sole basis for the Arbitrator's conclusion that the Kims had conceded certain damages, the court adequately addressed PCP's queries whether "the arbitrator prejudice[d] PCP when stating in the final award that the Kims conceded the $3,396.25 at the arbitration," and whether this "further prejudice[d] PCP by finding that [the] Kims were a prevailing party . . . ."  Finally, in explaining why *Jess* is distinguishable, the court adequately addressed PCP's query whether there was "defect in the form of the award by the offset applied by the arbitrator."

Particularly in light of the limited judicial review to which arbitral awards are subject, the trial court's explanations were sufficient.

## II. *CHALLENGES TO POSTJUDGMENT ORDERS*

PCP also appeals the trial court's postjudgment orders granting the Kims' requests for (1) postaward, prejudgment interest; and (2) attorney fees and costs incurred in confirming the Final Award.

### A. Postaward, Prejudgment Interest

The trial court granted the Kims' request under Civil Code section 3287, subdivision (a)[10] for $2,890.50 in postaward, prejudgment interest from the issuance of the Final Award to the entry of judgment. PCP contends the court erred in doing so because (1) the court awarded interest on an "unliquidated" sum; (2) the Kims were required to make the request to the Arbitrator, not the trial court; (3) their request to the trial court, if allowed, was untimely because it was not made before entry of judgment; and (4) prejudgment interest cannot be awarded on a recovery of attorney fees and costs, but only on "damages." These contentions are without merit.

### 1. Background

The Kims did not request postaward, prejudgment interest from the Arbitrator, and the Arbitrator did not award it. Rather, they first requested it from the trial court in their formal response to PCP's petition to vacate or correct the Final Award.

The trial court did not address the Kims' request for interest in its minute order confirming the Final Award, so the Kims promptly applied ex parte for an order shortening time to reconsider the issue. The court declined

---

10  Civil Code section 3287, subdivision (a) states in part: "A person who is entitled to recover damages certain, or capable of being made certain by calculation, and the right to recover which is vested in the person upon a particular day, is entitled also to recover interest thereon from that day, except when the debtor is prevented by law, or by the act of the creditor from paying the debt."

26

the ex parte request, but stated it would consider the issue at a noticed hearing on the Kims' impending motion for attorney fees and costs.

Before it resolved the fees/costs and interest issues, the trial court entered a judgment confirming the Final Award and ordering PCP to pay the Kims $74,840.18. The judgment also stated the court would address on a specified date the Kims' impending requests for attorney fees/costs and postaward, prejudgment interest.

The Kims then filed a noticed motion seeking attorney fees, costs, and postaward, prejudgment interest. PCP opposed the motion. After hearing argument, the trial court granted the Kims' request for $2,890.50 in postaward, prejudgment interest.

## 2. Legal Principles

Civil Code section 3287, which provides for the recovery of prejudgment interest on damages awards, applies to arbitration awards. (*Tenzera, Inc. v. Osterman* (2012) 205 Cal.App.4th 16, 21 (*Tenzera*).) "The purpose of prejudgment interest is to compensate the prevailing party for the loss of money during the period before the judgment is entered." (*Ibid.*)

The Kims requested postaward, prejudgment interest under Civil Code section 3287, subdivision (a), which provides that a party is *entitled* as a matter of right to "recover prejudgment interest on an amount awarded when the damages are certain, or capable of being made certain by calculation, and the right to recover those damages is vested" as of a date certain. (*Tenzera, supra*, 205 Cal.App.4th at p. 21.) By contrast, under subdivision (b), prejudgment interest is merely *discretionary* when the award is "based upon a cause of action in contract where the claim was unliquidated" (i.e., not for a sum certain). (Civ. Code, § 3287, subd. (b).)

27

"We review the trial court's prejudgment interest award for legal error." (*Tenzera, supra*, 205 Cal.App.4th at p. 21.)

### 3. Analysis

We conclude PCP's challenges to the trial court's award of postaward, prejudgment interest are without merit.

First, we reject PCP's contention that, because the amount of attorney fees and costs the Kims incurred in the arbitration was disputed in that forum, the sum was unliquidated for purposes of entitling the Kims to postaward, prejudgment interest. As soon as the Arbitrator determined the Kims were the prevailing parties and awarded them a specified sum in attorney fees and costs, that sum became liquidated. (See *Pierotti v. Torian* (2000) 81 Cal.App.4th 17, 27 (*Pierotti*) [final arbitration award fixes the amount of the claim as of "the date the arbitrator renders his award"]; *Tenzera, supra*, 205 Cal.App.4th at p. 22 [claim became "a fixed liability as of the date of the final arbitration award"]; *SCIE LLC v. XL Reinsurance America, Inc.* (9th Cir. 2010) 397 Fed.Appx. 348, 352 ["The award of fees and expenses incurred in arbitration was fixed and made certain at the time of the arbitration award . . . ."].) The fact PCP sought to vacate or correct the award in the trial court does not negate the fact that the amount of the claim was liquidated. (*Tenzera, supra*, 205 Cal.App.4th at p. 22 [damages were liquidated as of the date of the final arbitration award even when the award was initially vacated by the trial court before being reinstated by the Court of Appeal].)

Thus, because the Final Award fixed the amount of the Kims' claim, they were *entitled* to postaward, prejudgment interest on it—so long as their request was otherwise proper.

Second, in this vein, we are not persuaded by PCP's contention that the Kims were required to request interest from the Arbitrator instead of the trial court. Although parties may contract to grant arbitrators the authority to award postaward, prejudgment interest, trial courts may award such interest so long as the arbitrator has not already addressed the issue and declined to award interest. (See *Pierotti*, *supra*, 81 Cal.App.4th at pp. 27-28 ["in our view, the arbitrator never considered or ruled on the precise issue [the appellant] raises here: whether he is entitled to interest under Civil Code section 3287, subdivision (a) for the period between the award and the time the court entered judgment confirming the award"]; *Britz, Inc. v. Alfa-Laval Food & Dairy Co.* (1995) 34 Cal.App.4th 1085, 1106 (*Britz*); Knight et al., Cal. Practice Guide: Alternative Dispute Resolution (The Rutter Group 2020) ¶ 5:435 ["If prejudgment interest is not included in the award, a court may add such interest in proceedings to confirm the award."].)

The cases PCP cites to support a contrary conclusion are distinguishable. *Corona v. Amherst Partners* (2003) 107 Cal.App.4th 701 involved only attorney fees and costs incurred *during* the arbitration (not interest accruing *after* it), and thus the issue was reserved exclusively for the arbitrator before whom the fees and costs were incurred. (*Id.* at p. 706.) Similarly, in *Maaso v. Signer* (2012) 203 Cal.App.4th 362 (*Maaso*), the issues of attorney fees, costs, and prejudgment interest (under a different prejudgment interest statute for personal injury claims, Civ. Code, § 3291) were reserved exclusively for the arbitrator because it required the arbitrator to make a discretionary ruling about whether the prevailing party was entitled to expert costs, and " 'the arbitrator, not the trial court, . . . is best situated to determine the amount of reasonable attorney fees and costs to be awarded for the conduct of the arbitration proceeding.' " (*Maaso*, at p. 379.)

29

Unlike the *discretionary* determinations about events occurring *during* the arbitrations in *Corona* and *Maas*, the trial court here—presented with the Final Award liquidating the amount of the Kims' award—faced only a *nondiscretionary* duty (Civ. Code, § 3287, subd. (a)) to award interest accruing *after* the arbitration was complete. Thus, the Kims could request the award from the trial court in the first instance.

Third, there is no merit to PCP's contention that the Kims' request to the trial court, if allowed, was untimely under *North Oakland Medical Clinic v. Rogers* (1998) 65 Cal.App.4th 824, which held that a request for prejudgment interest "must be made by way of motion prior to entry of judgment, or . . . in the form of a motion for new trial no later than the time allowed for filing such a motion." (*Id.* at p. 831.) As detailed above, the Kims repeatedly requested prejudgment interest *before entry of judgment*—in their response to PCP's petition and in their ex parte request for an order shortening time. Moreover, the judgment expressly acknowledged their request was pending.

Finally, PCP's assertion that prejudgment interest is unavailable because the Kims' award consists entirely of attorney fees and costs (rather than "damages") misunderstands the nature of a final arbitration award. The court in *Britz*, *supra*, 34 Cal.App.4th 1085 explained that because an "arbitration award itself result[s] in a new and fixed liability," it is tantamount to a contractual "judgment in [the prevailing party]'s favor." (*Id.* at p. 1107.) And because "it is clear that interest after [a *judicial*] judgment accrues as to the entire award, including attorney fees," awarding interest on an entire "*contractual* judgment"—including attorney fees—"serve[s] the same purpose." (*Id.* at p. 1107, italics added.) Indeed, the *Britz* court reasoned that to hold otherwise "would punish [the prevailing party] for

30

using arbitration instead of the court system." (*Ibid*.) Stated differently, prejudgment interest is available on attorney fees contained in an arbitration award because, "[a]lthough the interest [is] pre-'*judicial* judgment,' it [is] post-'*contractual* judgment.'" (*Ibid*., italics added.)

We find this reasoning persuasive, as have many other courts. (See *Pierotti*, *supra*, 81 Cal.App.4th 17 at p. 27 ["*Britz* controls this case."]; *County of Solano v. Lionsgate Corp.* (2005) 126 Cal.App.4th 741, 753, fn. 9 ["The [prevailing party] was actually entitled to interest on its entire recovery [of civil penalties, and attorney fees and costs], not just on the amount of the penalties as specified by the arbitrator."]; *ITN Flix, LLC v. Trejo* (C.D.Cal., Sept. 30, 2020, No. 220CV01978ODWAGRX) 2020 WL 5820978, at *4 ["[a] prevailing party in arbitration is entitled [under California law] to pre-judgment interest on the entire award, *including attorneys' fees*," italics added]; *Sailfrog Software, Inc. v. Theonramp Group, Inc.* (N.D.Cal., Jan. 20, 1998, No. Civ. 97-7014 MISC SW) 1998 WL 30100, at *6 ["interest after an arbitration award but before a judicial judgment accrues as to the entire award, *including attorneys' fees*," italics added].)

PCP cites *Union Pacific Railroad Co. v. Santa Fe Pacific Pipelines, Inc.* (2014) 231 Cal.App.4th 134 to support the proposition that attorney fees and costs do not constitute "damages" on which prejudgment interest may be awarded under Civil Code section 3287. (*Union Pacific*, at p. 202 [observing that Civ. Code "section 3281 defines damages as involving unlawful conduct by a 'person in fault' and [Civ. Code] section 3287 requires damages before prejudgment interest may be awarded"].) Regardless of whether that holds true in traditional litigation, *Union Pacific* does not address the particular circumstance before us—an arbitral award of contractual attorney fees and

31

costs reduced to a "post-'contractual judgment.'" (*Britz*, *supra*, 34 Cal.App.4th at p. 1107.)

## B. Trial Court's Award of Attorney Fees and Costs

PCP contends the trial court erred in awarding the Kims the "grossly excessive" amount of $30,155.36 in attorney fees and costs incurred in confirming the Final Award. (Bolding and capitalization omitted.) We find no abuse of discretion.

## 1. Background

After the trial court granted the Kims' petition to confirm the Final Award and denied PCP's petition to correct or vacate it, the Kims moved for an award of attorney fees and costs as the prevailing party in each proceeding. The Kims supported their motions with (1) declarations from their counsel establishing the amount of work performed and the attorneys' billing rates; (2) memoranda of costs; and (3) copies of billing records for the pertinent work. The Kims sought $32,918.50 in attorney fees, and $2,120.51 in costs.

PCP opposed the Kims' motions, arguing the Kims' legal bills showed "that most of the fees sought are not only excessive in nature but are actually directly related to [PCP's pending] fraud case." However, PCP did not address any specific billing entries.

In reply, the Kims' counsel submitted additional declarations and billing records showing that the pending fee request did not include work on the fraud case.

At the hearing, PCP's counsel argued the Kims' request was "grossly excessive" and "terribly inflated" because "these petition matters are very basic and simple." He argued the Kims' counsel should have spent only about 18 hours, not the 140 hours for which they sought to recover fees. When

pressed by the court, PCP's counsel acknowledged he provided "no breakdown" of specific billing entries to which he objected.

In a subsequent minute order, the trial court determined the Kims were the prevailing parties and awarded them $28,086 in attorney fees and $2,069.36 in costs. The court explained it reduced the fee request by $4,832.50 because it was unnecessary for two attorneys to have attended the hearing on the petitions, and because some of the work on the instant motions was excessive. "Otherwise, the Court [found] that the work performed and the number of hours expended [were] reasonable and necessary." The court explained it did not further reduce the fee award because "PCP fail[ed] to dispute any specific line item(s) presented in counsel's billing invoices" or "identif[y] any amount of time that would be appropriately allocated to the fraud case."

### 2. Legal Principles

The prevailing party in a judicial proceeding to confirm, correct, or vacate an arbitration award is entitled to recover attorney fees (when authorized by contract) and costs incurred in that proceeding. (§§ 1293.2, 1033.5, subd. (a)(10(A); *Cohen*, *supra*, 31 Cal.App.5th at pp. 877-878.)

"[T]he fee setting inquiry in California ordinarily begins with the 'lodestar,' i.e., the number of hours reasonably expended multiplied by the reasonable hourly rate." (*PLCM Group, Inc. v. Drexler* (2000) 22 Cal.4th 1084, 1095.) "The lodestar figure may then be adjusted, based on consideration of factors specific to the case, in order to fix the fee at the fair market value for the legal services provided." (*Ibid.*)

The party seeking fees and costs " ' "bear[s] the burden of establishing entitlement to an award and documenting the appropriate hours expended and hourly rates." ' " (*Roth v. Plikaytis* (2017) 15 Cal.App.5th 283, 290

33

(*Roth*).) " 'California courts do not require detailed time records, and trial courts have discretion to award fees based on declarations of counsel describing the work they have done and the court's own view of the number of hours reasonably spent. [Citations.]' " (*Syers Properties III, Inc. v. Rankin* (2014) 226 Cal.App.4th 691, 698.)

Once the moving party meets its burden, the burden shifts to the opposing party "to present specific objections, supported by rebuttal evidence." (*Roos v. Honeywell Internat., Inc.* (2015) 241 Cal.App.4th 1472, 1494 (*Roos*).) "In challenging attorney fees as excessive because too many hours of work are claimed, it is the burden of the challenging party to point to the specific items challenged, with a sufficient argument and citations to the evidence. General arguments that fees claimed are excessive, duplicative, or unrelated do not suffice. Failure to raise specific challenges in the trial court forfeits the claim on appeal." (*Premier Medical Management Systems, Inc. v. California Ins. Guarantee Assn.* (2008) 163 Cal.App.4th 550, 564 (*Premier Medical*); see *Gorman v. Tassajara Development Corp.* (2009) 178 Cal.App.4th 44, 101 ["The party opposing the fee award can be expected to identify the particular charges it considers objectionable."]; *Raining Data Corp. v. Barrenechea* (2009) 175 Cal.App.4th 1363, 1376.)

" 'We review an order granting or denying fees for an abuse of discretion. [Citation.] "Because the 'experienced trial judge is the best judge of the value of professional services rendered in his court,' we will not disturb the trial court's decision unless convinced that it is clearly wrong, meaning that it is an abuse of discretion." ' " (*Roth, supra*, 15 Cal.App.5th at p. 290.)

## C. Analysis

PCP does not dispute that the Kims were the prevailing party or that their counsels' billing rates were reasonable. Instead, PCP asserts only that

34

the trial court abused its discretion by awarding fees for an unreasonable number of hours. The court did not abuse its discretion.

Contrary to PCP's contention on appeal, the Kims did not "fail[ ] to meet their burden" in the trial court. Rather, they supported their motions with declarations from counsel and—though not required—extensive billing records. Once the Kims produced this evidence, the burden shifted to PCP "to present specific objections, supported by rebuttal evidence." (*Roos*, *supra*, 241 Cal.App.4th at p. 1494.)

PCP failed to do so. Instead, PCP's counsel merely offered his view of how much time the Kims' counsel should have spent. And when pressed by the trial court, counsel admitted he had "no breakdown" of specific billing entries he deemed excessive or that related only to the fraud case. This was insufficient to rebut the Kims' showing. (*Premier Medical*, *supra*, 163 Cal.App.4th at p. 564 ["General arguments that fees claimed are excessive, duplicative, or unrelated do not suffice."].)

## DISPOSITION

The judgments and postjudgment orders are affirmed.


HALLER, J.

WE CONCUR:


HUFFMAN, Acting P. J.


GUERRERO, J.

35